**MOHOMA OIL COMPANY, a Corporation, Plaintiff in Error,**

v.

**AMBASSADOR OIL CORPORATION, a Corporation, Sinclair Oil & Gas Company, a Corporation, Tri-Cities Gas Corporation, a Corporation, and Anadarko Production Company, a Corporation, Defendants in Error.**

No. 42559.

Supreme Court of Oklahoma.

Sept. 8, 1970.

As Corrected Sept. 9, 1970.

952

Leslie L. Conner, James M. Little, Leslie L. Conner, Jr., and Gordon Quilter, Oklahoma City, for plaintiff in error.

C. Harold Thweatt, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for defendants in error Ambassador Oil Corp. and Anadarko Production Co.

Rex Short, Ted Foster, Jr., Tulsa, Hicks Epton, of Horsley, Epton & Culp, Wewoka, for defendant in error Sinclair Oil & Gas Company.

J. Jerry Dickman, of Martin, Logan, Moyers, Martin & Conway, Tulsa, for defendant in error Tri-Cities Gas Corp.

DAVISON, Justice.

This action was originally commenced in the District Court of Latimer County, on December 31, 1962, by plaintiff, Mohoma Oil Company, Inc., (formerly Limestone Oil and Gas Company) against defendants, Ambassador Oil Corporation, et al. Plaintiff Mohoma filed an amended petition, and later filed a second amended petition, and on January 16, 1967, the court sustained demurrers to the second amended petition.

Plaintiff Mohoma, with permission of the court, then filed a third amended petition against defendants, Ambassador Oil Corporation; Anadarko Production Company (successor to all of the assets of Ambassador); Sinclair Oil and Gas Company, and Tri-Cities Gas Corporation. The court sustained said defendants' general demurrers to this third amended petition and dismissed the action when plaintiff elected to stand upon that amended petition. Plaintiff Mohoma appeals from this order.

We will refer to the parties in accord with their status in the district court, or by name. The plaintiff Mohoma is successor, by change of name, to Limestone Oil and Gas Company, and our use of either name refers to the same corporate entity.

Plaintiff's lengthy petition with numerous exhibits, is divided into four causes of action in which plaintiff attempts to allege facts and circumstances sufficient to sustain its claim that it was the owner of oil and gas lease rights in certain lands in Latimer County, or that it was entitled to be compensated for the loss thereof resulting from claimed illegal acts on the part of certain of the defendants. The circumstances common to all four causes of action began with the execution of an oil and gas lease dated February 18, 1927, herein referred to as the McMurray lease. This lease was acquired by Limestone Oil and Gas Company in 1927. It covered 920 acres located in parts of Sections 10, 11, 14 and 15 (including the Southwest Quarter of Sec. 15), all in Township 5 North, Range 18 East of I.M., in Latimer County, Oklahoma. The lease provided that a well would be commenced within 120 days and pursued with diligence, and that it would remain in force for a term of five years, and as long thereafter as oil and gas, "or either of them, is produced from said land by the lessee." Limestone commenced and drilled a gas well in the SW¼ of SW¼ of Sec. 15, under authority of the lease. Thereafter, on November 25, 1933, in an action brought by Oklahoma Pipe & Steel Company in the District Court of *Hughes* County, the court appointed a receiver for Limestone with instructions to collect, control, and manage the assets of Limestone.

With the situation in this status and by reason of alleged subsequent events the plaintiff then undertakes to allege four causes of action, which are in effect requests for alternative relief. However, it is obvious from our later discussion that there is considerable conflict, both as to theory and controlling facts, between the causes of action. In the first cause of action the plaintiff asserts ownership of an oil and gas lease on the West Half of the Southwest Quarter of Section 15 by virtue of an alleged subsequent lease known as the "Wood's lease." In its second cause of action plaintiff asserts it owns the oil and gas lease rights under the original Mc-

Murray lease to the extent of a described 740 acres, including the Southwest Quarter of Section 15. In the third cause of action the plaintiff claims to own oil and gas lease rights in the same 740 acres, based on the theory of acquisition by adverse possession of such mineral interests. In a fourth cause of action the plaintiff alternatively seeks a money judgment against the defendants on the ground that they conspired and prevented plaintiff from protecting and preserving its interests in the above described oil and gas leases.

Plaintiff's first cause of action, relative to owning the Wood's oil and gas lease on the W½ of SE¼ of Sec. 15, alleges that this lease was the result of a contract, duly approved by the District Court of Hughes County, dated July 13, 1936, between Limestone and the receiver (first party) and Roy Wood (second party), and that "the lease was executed and delivered to Limestone and is referred to as the Wood lease." A copy of the contract is attached as an exhibit. No copy of this Wood's lease is attached as an exhibit and there is no allegation that it was recorded in Latimer County. The only provisions of the Wood's lease disclosed by the allegations and the contract are that, after Limestone and the receiver perform certain conditions, Wood will execute to Limestone a 10 year commercial oil and gas lease with the usual one-eighth royalty and $1.00 per acre delay rental on the W¼ of the SW¼ of Sec. 15, and a similar lease upon 110 acres in Sec. 11.

The contract reflects that the "conditions," preliminary to Wood executing the leases, require that Limestone and the receiver will first assign the McMurray lease to Wood, in so far as it covers a described 730 acres thereof (not including the W½ of SW¼ of Sec. 15), and also procure assignments of all unit holders' interests therein, and also an assignment to Wood of interests in the McMurray lease that had been previously assigned to Limestone. The contract also provides that, upon execution of the leases by Wood, the first party (Limestone and the receiver) will re-

lease the McMurray lease covering the W¼ of SW¼ of Sec. 15 (80A) and also the 110 acres in Sec. 11.

At this point we comment, in view of the allegation that Wood executed and delivered the lease to Limestone on the W½ of SW¼ of Sec. 15, that it must be concluded that the other terms of the contract were performed, and therefore the McMurray lease was assigned to Wood to the extent described, and further that the McMurray lease was released as to the W½ of SW¼ of Sec. 15. We further comment that this state of affairs conflicts with plaintiff's claim in its second cause of action that it owns oil and gas lease rights in 740 acres of the McMurray lease, including the W½ of SW¼ of Section 15.

Plaintiff further alleges in its first cause of action that from prior to 1946 and until May 15, 1962, some party in behalf of plaintiff has been in possession of the Wood's lease and has produced gas from the well located thereon; and that its receiver was in possession until March 22, 1954, when the receivership was terminated and an order was made in the Hughes County receivership action whereby the "Wood lease," to the extent of the SW¼ of SW¼ of Sec. 15, was "sub-leased" to the defendant Tri-Cities Gas Corporation, subject to the provisions of said order. A copy of this order is attached as an exhibit to the third amended petition. The order reflects that Tri-Cities had intervened in the receivership action for the purpose of presenting or collecting some "claims and demands" from Limestone, that while the matter was being tried Limestone and the receiver and Tri-Cities agreed to a settlement of these claims and demands, and that the court made an order describing and directing the terms and manner in which the claims of Tri-Cities were to be satisfied.

The order decreed that Tri-Cities " * * * shall take as its sole and separate property, the gas well known as the McMurray Well, together with that portion of the oil and gas lease on which said well

is located, described as SW¼ of SW¼ of Section 15, * * * Latimer County, Oklahoma;" that Tri-Cities likewise take a second named (Kilpatrick) gas well and a portion of a different lease on which it was located, which are not in the controversy in the present action; and continue to produce the wells and pay royalties and all taxes until March 15, 1955. The order further provided as follows:

" * * *. That on or after said March 15, 1955, the said Tri Cities Gas Corporation shall have the option to continue with production of either or both of said leases under the terms and conditions, aforesaid, or, at its option, may abandon production on either or both of said gas wells and thereupon salvage all personal property on or connected with said leases, said salvage to be its sole property. Provided, however, that in the event either or both of said leases are abandoned, as aforesaid, the said Tri Cities Gas Corporation shall thereupon assign said oil and gas lease or leases, without covenants of warranty, to the Limestone Oil and Gas Company, a corporation, its successors and assigns, or its nominee or its receiver. Upon the abandonment of either or both of said gas leases, Tri Cities Gas Corporation shall have the right to pull the casing and take all other steps necessary to salvage the personal property. * * *"

The order further directed that the receiver execute and deliver assignments of the oil and gas lease "hereinabefore described and bills of sale to personal property," to Tri-Cities, setting forth the terms of the order, and that Limestone execute any further instruments deemed necessary to carry out the settlement.

Pursuant to this order, the receiver on March 30, 1954, executed an instrument, both reciting and attaching a copy of the order, whereby all of Limestone's title and interest under the *McMurray* lease, or any other lease, in the SW¼ of SW¼ of Sec. 15, was assigned to Tri-Cities. These were filed of record in Latimer County on April 1, 1954.

Plaintiff alleged that Tri-Cities maintained the well as a producing gas well until Tri-Cities and Ambassador Oil Corporation "wrongfully and unlawfully conspired to effectuate the abandonment and plugging of said well on May 15, 1962," and that such defendants and Sinclair Oil and Gas Company agreed that plaintiff would not be notified of the abandonment until the well had been plugged. Plaintiff alleges that the above described 1954 court order and assignment "manifests the intent that the assignment of the oil and gas lease therein provided" from Tri-Cities to Limestone would vest in plaintiff as a valid and subsisting oil and gas lease.

To support these conclusions the third amended petition further alleges and attaches a letter from Ambassador to Tri-Cities, dated January 4, 1961. This letter concerns the two wells (McMurray and Kilpatrick) and leases received by Tri-Cities in satisfaction of its claims against Limestone. As to the well and McMurray lease on the SW¼ of SW¼ of Sec. 15, the letter asserts Ambassador has a valid oil and gas lease thereon, and charges that Tri-Cities is a trespasser and that the well was drilled pursuant to a lease which had been released of record and against which title had been quieted. The letter then outlines a proposal of acquisition of the Kilpatrick lease, which was made contingent upon Tri-Cities plugging and abandoning the McMurray well, with the right to Tri-Cities to "pull the casing and take all other steps necessary to salvage the personal" property, and then notify Limestone and offer to assign to it all of the Tri-Cities' interest in the McMurray lease, in so far as it covers the SW¼ of SW¼ of Sec. 15, "pursuant and in accordance with the obligations placed" on Tri-Cities by the 1954 order of the District Court of Hughes County. Tri-Cities accepted this proposal, and it is alleged that Tri-Cities plugged and abandoned the McMurray well on May

15, 1962, and on July 18, 1962, assigned to plaintiff Mohoma (successors to Limestone) without warranty all of Tri-Cities' interest in the SW¼ of SW¼ of Sec. 15, acquired by the 1954 court order.

Plaintiff further alleges in its first cause of action that on December 9, 1960, Ambassador applied to the Oklahoma Corporation Commission for an order establishing 640 acre spacing units for gas in Township 5 North, Range 18 East; that on January 6, 1961, an order was entered establishing 640 acres spacing units; that on May 6, 1962, Ambassador commenced drilling a well on the SE¼ of Sec. 15, which was completed as a producing gas well on June 27, 1962; and that Sinclair and Tri-Cities had notice and were aware of these proceedings and activities. Plaintiff alleges and contends that the drilling of this well in the spacing area inured to the benefit of plaintiff and fulfilled all obligations under its oil and gas lease within the area.

Plaintiff prays that the court decree that it has a valid oil and gas lease (Wood's lease) on the W½ of SW¼ of Sec. 15, and for an accounting of the production from the allowed well.

■ In considering the allegations of the first cause of action we recognize the general rule that, for the purpose of testing the sufficiency of a petition to state a cause of action, a demurrer thereto admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom, and the petition is to be liberally construed in favor of the plaintiff, but if plaintiff is not entitled to recover under the facts alleged in the petition, a demurrer thereto should be sustained. Williams v. City of Bristow, Okl., 350 P.2d 484, 84 A.L.R.2d 501.

We have also stated additional rules to be used in determining the sufficiency of a petition, including the following rules:

■ Where a pleading is challenged by demurrer, its language, where doubtful, will be construed against the pleader upon the ground that, as he selects the language, he should make his meaning clear. Harrison v. Commander Mills, Okl., 298 P.2d 749, 751.

■ A demurrer to a petition admits all facts well pleaded together with all inferences which may be reasonably drawn therefrom, but the demurrer does not admit facts which are not pleaded, or conclusions of fact or law which are not supported by the allegations, of evidentiary facts in the petition. Groves v. Board of County Com'rs of Washita County, Okl., 429 P.2d 994.

■ The first cause of action is based on the alleged execution and delivery of the Wood's lease in 1936, and upon the continued life of such lease. Admittedly, the receivership court had approved a contract in which, supra, there was a provision for execution of such a lease and requiring Limestone and the receiver to execute instruments changing the ownership and even the continued existence of portions of the original 1927 McMurray lease including a release of the exact area in which the Wood's lease was to supersede the McMurray lease. However, in direct conflict with plaintiff's continued reference to the "Wood lease," as being the subject of the 1954 court order directing the receiver to transfer the lease and gas well to Tri-Cities and of the assignment making the transfer, the documents themselves expressly describe the McMurray lease and well as being the existing interest and property being transferred. Limestone was a party to the 1954 proceeding and was represented by counsel at the hearing, and both it and the attorneys, and the court, would have been cognizant of any "Wood lease" and of release of the McMurray lease. We are not holding here that either the trial court, or this court, should determine a question of fact in considering a demurrer to the petition. We are simply holding that the language of the allegations, when considered with the exhibits, is doubtful and ambiguous and should be construed against the plaintiff as refuting plaintiff's claim of a "Wood lease."

Furthermore, no copy of the alleged 1936 "Wood lease" was attached to the third amended petition and there is no allegation that it was recorded. The only allegations as to contents of the lease are that it was a 10 year commercial oil and gas lease, with usual one-eighth royalty, and $1.00 per acre delay rental. There are no allegations relative to circumstances or conditions stipulated in the lease whereby the term thereof was extended after the primary term had expired or after production had ceased.

■ Under these circumstances, and assuming that a "Wood lease" was executed and that Tri-Cities produced gas by virtue thereof, the most that may be inferred from these alleged facts is that the Wood lease was regarded as in force for as long as oil or gas was produced. We fail to see how by the most liberal construction of the allegations it could be inferred that such lease contained a provision for extension for exploration or development beyond the date when all production had ceased. To do so would construe a demurrer to admit a material fact that had not been pleaded.

Under the allegations of the first cause of action the McMurray gas well on the SW¼ of SW¼ of Sec. 15, was plugged and abandoned May 15, 1962, and even though we concede the truth of plaintiff's legal conclusion that production from Ambassador's allowed spacing well in the SE¼ of Sec. 15, would have the effect of extending an existing Wood lease, still that well was completed June 27, 1962, after the McMurray well had permanently stopped production. In Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187, the lease provided that it would remain in force for the term of one year, "and as long thereafter as oil or gas or either of them is produced therefrom by the party of the second part, his successors or assigns." This court held that this phrase was not ambiguous, and that where the year had elapsed and the lessee had plugged the only well that had produced oil or gas, and there was no other well on the premises from

which oil or gas could be produced, the lease had terminated by its own terms. See also Statex Petroleum v. Petroleum, Inc., 10 Cir., 308 F.2d 815, 818, for a similar application of this rule.

Under the alleged circumstances, and allowing the most liberal inferences therefrom, the "Wood lease" had terminated.

This brings us to the matter of disposing of plaintiff's allegations of conspiracy between Tri-Cities and Ambassador to plug and abandon the McMurray well and thereby wrongfully terminate the "Wood lease." Plaintiff alleges that Sinclair had notice of such conspiracy. In doing this we must necessarily assume that there was a "Wood lease."

■ Plaintiff's claim of conspiracy to defraud it is based on the assumption that the 1954 court order (whereby Tri-Cities acquired the gas well, casing, personal property, and lease on the SW¼ of SW¼ of Sec. 15) obligated Tri-Cities to reassign to Limestone a valid lease when it (Tri-Cities) decided to plug and abandon the well, and therefore a fiduciary relation arose between Limestone and Tri-Cities, which was violated by Tri-Cities when it entered into the 1961 letter agreement with Ambassador. The 1954 order, supra, does not support this construction. Under its terms Tri-Cities received "as its sole and separate property" the McMurray gas well and the portion of the lease on which it was located, with the right after March 15, 1955, to "abandon production * * * and thereupon salvage all personal property * * * to be its sole property." In the event of abandonment "as aforesaid" Tri-Cities was to assign the lease "without covenants of warranty" to Limestone or its successors and assigns. Upon abandonment of the lease, Tri-Cities "shall have the right to pull the casing * * *." We find nothing in this language to support the conclusion that a valid lease was to be reassigned to Limestone. In fact, the language supports the opposite conclusion.

■ We also do not agree that the 1961 letter agreement between Tri-Cities and

Ambassador violated any rights of Limestone under the 1954 court order. Tri-Cities merely contracted to do what it had a right to do voluntarily.

Fraud is never presumed, but it must be affirmatively alleged and proven by the party who relies upon it, and cannot be inferred from facts which may be consistent with honesty of purpose. Weston v. Acme Tool, Incorporated, Okl., 441 P.2d 959.

It is our conclusion that the trial court properly sustained defendants' demurrer to plaintiff's first cause of action.

In its second cause of action plaintiff alleges the execution and later acquisition by Limestone of the 1927 McMurray oil and gas lease on lands in Latimer County, and states that it is the owner of said lease to the extent of a described 740 acres thereof in parts of Sections 10, 11, 14 and 15 (including the SW¼ of Sec. 15). Plaintiff then alleges the matters and events set forth in its first cause of action, except that it omitted all reference to a "Wood lease," and in place thereof accepted and treated the McMurray lease as the subject of the 1954 order of the District Court of Hughes County and of Tri-Cities' later transaction with Ambassador. Plaintiff also relies upon the allowed well drilled by Ambassador in the SE¼ of Sec. 15, to fulfill all obligations of the McMurray lease relative to its coverage of the 740 acres.

In addition the plaintiff alleges, in an attempt to present a valid McMurray lease, that a judgment rendered in the District Court of Latimer County purporting to cancel and terminate the McMurray lease was void. The alleged facts and circumstances concerning this judgment are that one Irwin L. Wilson filed an application in the receivership action *in the District Court of Hughes County* requesting permission to sue the receiver in the District Court of Latimer County; that on July 2, 1936, the court in Hughes County granted permission to Wilson to sue the receiver in Latimer County, and the action was duly filed by Wilson, as owner of the land cov-

ered by the McMurray lease, against the receiver and Limestone and numerous other parties to cancel and quiet title against the McMurray lease. The receiver filed a general appearance and disclaimed any interest or title in the property. On October 7, 1936, a judgment was rendered in the action, finding that Limestone and the receiver had filed entries of appearance and disclaimers; concluding from the evidence that Limestone had abandoned the gas well on several occasions and had last abandoned it in September, 1934, and had failed and refused to pay the full royalty for gas produced; and that the well had never been a commercial producer or paying well; and canceling the lease and quieting title against it and the defendants.

Plaintiff alleges and contends the judgment is void because the receiver had no right or power to enter an appearance and disclaim any interest in the lease.

In State ex rel. Stauffer v. Halley, 159 Okl. 14, 12 P.2d 523, we held that the court appointing the receiver has the power to control, *at its discretion,* all controversies which affect the property placed in the control of the receiver.

In the present case the court appointing the receiver (District Court of Hughes County) granted leave to Wilson to sue the receiver in Latimer County. We can only conclude from such action that the receivership court intended that the case in Latimer County proceed to a determination of Wilson's rights and interest in the Latimer County property. Limestone entered an appearance in the case and under all of the circumstances we can see no reason why the receiver could not also enter an appearance, where the plaintiff had validly made the receiver a party.

In *Willis v. Aetna Life Ins. Co.,* 185 Okl. 647, 95 P.2d 608, we said the requirement, that leave be secured from the appointing court before making a receiver a defendant, may be waived by him by defending in such suit without objection, or by intervening therein in behalf of his trust.

In 75 C.J.S. Receivers § 345, p. 1022, it is stated that, "Where a receiver appears and answers or demurs he cannot object to want of process or notice, * * *."

We need not discuss the validity of the plaintiff's contention that the receiver was without power to disclaim any interest in the McMurray lease. The judgment canceling the McMurray lease was not based upon the disclaimer of Limestone and the receiver. The judgment by its recitals, supra, was based upon evidence from which the court determined the lease was null, void and of no legal force and effect, and canceled the McMurray oil and gas lease.

It is our conclusion that plaintiff's allegations of invalidity of the judgment have no merits.

However, there remains one aspect of the allegations in the second cause of action that requires disposition. We have reference to those allegations concerning the 1954 order of the District Court of Hughes County, involving Tri-Cities' acquiring the gas well and part of the 'McMurray lease,' to the extent of the SW¼ of —, SW¼ of Sec. 15, and the subsequent activities of Tri-Cities and Ambassador. The 1927 McMurray lease, as heretofore stated, was for five years and as long thereafter as oil or gas, or either of them "is produced from said land by the lessee." As a consequence, our application of Anthis v. Sullivan, and our conclusion reached in the first cause of action are equally applicable to plaintiff's allegations in support of its conclusion that the McMurray lease was to that extent extended.

 The McMurray lease was canceled by the 1936 judgment in the District Court of Latimer County, and any claim that the lease survived as to any portion thereof in Sec. 15, is without support, because under the alleged facts the lease terminated by its own terms.

The trial court did not err in sustaining demurrers to the second cause of action.

Plaintiff's third cause of action is in effect a reiteration of the allegations of the second cause of action, including the acqui-sition of the McMurray lease, the drilling of the gas well in the SW¼ of SW¼ of Sec. 15, the 1954 order whereby Tri-Cities acquired the well and the lease on this area, and the transaction of Tri-Cities with Ambassador. The third cause of action does not describe, nor allege the invalidity, of the 1936 judgment canceling the McMurray lease. Plaintiff claims and prays it be adjudicated the owner of a valid oil and gas lease, acquired by adverse possession, covering the same 740 acres in Sections 10, 11, 14 and 15, or such parts thereof as plaintiff shows a valid claim thereto, providing for a ⅞ working interest to plaintiff Mohoma, with the customary ⅛ royalty.

The grounds for this relief are based on allegations that Limestone was in the open, continuous, exclusive, notorious, adverse and hostile possession of "said McMurray Lease and said gas well located thereon" for more than 15 years prior to 1954, producing gas in paying quantities; that Tri-Cities then went into possession of "said McMurray lease" and operated the gas well until it "wrongfully conspired" (with Ambassador) to abandon the well on May 15, 1962; that the possession of Tri-Cities accrued to the benefit of plaintiff; and that plaintiff reacquired all rights in such claimed lease upon reassignment by Tri-Cities back to plaintiff Mohoma. As in the other causes of action plaintiff relies upon the drilling of allowed wells by Ambassador within the 640 acre spacings to fulfill its obligations under the lease it allegedly acquired by adverse possession.

 Plaintiff alleges generally its statements of conclusions of adverse possession and also specific statements of fact. The rule is that specific statements of facts as the basis of a cause of action control general statements, whether they be or be not regarded as conclusions of law. Holmes v. Durant Nursery Co., 172 Okl. 385, 45 P.2d 698. In addition to the specifically alleged facts in the third cause of action, we should consider those established matters or instruments alleged in the other

causes of action, insofar as they materially affect the position of the plaintiff.

In disposing of the second cause of action we upheld the validity of the 1936 judgment of the District Court of Latimer County canceling the McMurray lease. On the face of the record, this effectively terminated any contractual oil and gas lease rights Limestone had in the entire 920 acres. However, for the purposes of the demurrers, it must be conceded that production of gas did continue from the SW¼ of SW¼ of Sec. 15. It is upon this single source of production, located in the extreme southwest corner of the formerly leased areas, that plaintiff bases its claim of an oil and gas lease by reason of adverse possession.

■ An oil and gas lease is a chattel real, an incorporeal hereditament, and a profit a pendre, which grants only the exclusive right, subject to legislative control, to explore by drilling operations, to reduce to possession, and thus acquire title to the oil and gas which is personalty. Continental Supply Co. v. Marshall, C.C.A. Tenth Circuit, 152 F.2d 300, 305, and cases cited.

■ Plaintiff is not seeking to establish this right in it by ownership of land or by adverse possession of the land of which the minerals are a part, but by reason of adverse possession of the minerals separate and apart from the title to the land itself. In this situation the only way for such a person to acquire a title or interest in minerals by adverse possession is "to take actual possession of the minerals by opening and operating mines for the statutory period." Deruy v. Noah, 199 Okl. 230, 185 P. 2d 189, 191; Douglas v. Mounce, Okl., 303 P.2d 430. See also Hassell v. Texaco, Inc., Okl., 372 P.2d 233, 235.

■ In the Hassell case we also said relative to adverse possession of minerals, that such adverse possession must be open, visible, continuous, and exclusive, with claim of ownership, such as will notify persons seeking information upon the subject that the premises are not held in subordination to any claim of others, but against all titles and claimants.

■ The only allegations in the third cause of action that appear to satisfy the above rules are those relative to producing gas from the well in the SW¼ of SW¼ of Sec. 15. Under all of the alleged facts and circumstances, and in view of the above rule of law, and giving a broad interpretation to the allegations, we believe the third cause of action states a cause of action based on adverse possession of oil and gas lease rights in the SW¼ of SW¼ of Sec. 15.

■ Assuming that plaintiff has sufficiently alleged acquisition of an oil and gas lease on the SW¼ of SW¼ of Sec. 15, by adverse possession, the question arises as to whether, under the circumstances, the lease survived the abandonment and plugging of the gas well.

Plaintiff's third cause of action refers to the McMurray lease as being the subject of the 1954 order and consequent assignment to Tri-Cities. The assignment also includes any other interest, however acquired, in the SW¼ of SW¼ of Sec. 15. If we assume that such adversely acquired oil and gas lease was on terms like those in the McMurray lease then the lease has terminated by its terms. The reason for such termination are those stated in our disposition of the second cause of action, where we held that the McMurray lease had terminated because production had ceased.

On the other hand we have an adversely acquired lease, the terms of which are not disclosed. This was the situation in the first cause of action concerning the "Wood lease." In this situation, we hold that such has terminated on the grounds and for the reasons set forth in our disposition of the first cause of action.

The trial court did not err in sustaining demurrers to the third cause of action.

This brings us to the proposition of the claimed error in sustaining demurrers to plaintiff's fourth and last cause of action for damages.

The allegations in this cause of action are an enlargement of those in the first cause of action charging Tri-Cities and Ambassador with conspiracy to defraud plaintiff by means of their 1961 agreement whereby the McMurray well was abandoned and plugged. Sinclair is charged with knowledge and ratification of the claimed conspiracy.

We disposed of this proposition adversely to plaintiff when we affirmed the trial court's action in sustaining demurrers to said first cause of action. On the grounds and for the reasons announced therein we affirm the order of the trial court sustaining demurrers to the fourth cause of action.

The judgment of the trial court is affirmed.

All Justices concur.