Donna LAMKE, Appellant,

v.

FUTORIAN CORPORATION, et al., Appellees.

Nos. 57077, 57479.

Supreme Court of Oklahoma.

June 4, 1985.

As Changed June 6, 1985.

As Corrected June 12, 1985.

Rehearing Denied Oct. 22, 1985.

Norman, Wallace, Hays, Isaacs & McNulty by John W. Norman, Oklahoma City, for appellant.

Looney, Nichols, Johnson & Hayes by Edwin F. Garrison and Robert D. Looney, Jr., Oklahoma City, for appellee Futorian Corp.

Shook, Hardy & Bacon, Kansas City, Mo., and McAfee & Taft by Robert H. Gilliland, Jr., and Joseph H. Bocock, Oklahoma City, for appellee Philip Morris Inc.

HODGES, Justice.

Appellant-Plaintiff Lamke appeals from judgments of the trial court in which demurrers to her Third Amended Petition were sustained as to her cause of action against Appellees-Defendants Philip Morris Incorporated and Futorian Corporation. The trial court expressly dismissed the plaintiff's action against these defendants, and these consolidated appeals followed.

This lawsuit has its genesis in a fire which allegedly started when a cigarette manufactured by Philip Morris Incorporated fell and ignited a sofa manufactured by Futorian Corporation while Mrs. Lamke [appellant-plaintiff] was on the sofa. It resulted in severe burns to much of Mrs. Lamke's body. She brought this action against these two defendants, along with other defendants not parties to this appeal, alleging that defects in the manufacturers'

respective products rendered those products unreasonably dangerous, and caused her injuries. After the trial court sustained the manufacturers' separate demurrers to her Third Amended Petition, it dismissed the plaintiff's action against them, foreclosing any right to further amend.[1]

■ In testing the sufficiency of the petition by a demurrer under the Code of Procedure in effect at the time the question came to be presented, we are guided by long-standing principles recognized in numerous cases including *Mohoma Oil Co. v. Ambassador Oil Corp.*, 474 P.2d 950 (Okla. 1970) and *Williams v. City of Bristow*, 350 P.2d 484 (Okla.1960). Under those rules a demurrer admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom, and the petition is to be liberally construed in favor of the plaintiff. The demurrer does not admit facts which are not pleaded, or conclusions of fact or law which are not supported by the allegations of evidentiary facts in the petition. If the plaintiff is not entitled to recover under the facts properly alleged in the petition, the demurrer should be sustained. *Groves v. Board of County Commissioners, Washita County*, 429 P.2d 994 (Okla.1967).

Since different operative facts allegedly give rise to the liability of each of the appellees-defendants in this case, we must examine the latest version of the petition to determine, under the test noted above, whether a cause of action has been stated against each appellee-defendant.

Plaintiff premises her claim against each defendant on strict liability under Manufacturers' Products Liability, and upon negligence. With regard to the strict liability claim, both defendants argue that the petition does not allege that the plaintiff's injuries resulted from a defect which rendered that defendant's product "unreasonably dangerous" as required by *Kirkland v.*

---

1. Lamke does not raise any error in the trial court's order dismissing the case as opposed to allowing additional amendments, although the record does not contain an affirmative election by her to stand upon the last version of the petition. Accordingly, we need not consider whether the trial court erred in its dismissal order. *Irelan v. Hall*, 295 P.2d 775 (Okla.1956).

*General Motors Corp.,* 521 P.2d 1353 (Okla.1974). In *Kirkland* we defined the phrase "unreasonably dangerous" to mean:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to community as to its characteristics."

■ That test, applied in this context, means that if Morris' cigarette was more likely, than expected by the consumer, to cause this fire because of defects, then it was unreasonably dangerous. By the same token, if the sofa was more likely, than expected by the ordinary consumer, to ignite because of some defect, the sofa was unreasonably dangerous. That the product be rendered "unreasonably dangerous" by the defect is an essential requirement for pleading a cause of action in Manufacturers' Products Liability, *Kirkland, supra.* Thus, if the plaintiff has not sufficiently alleged that the cigarette was more likely, than would be expected by the ordinary consumer, to cause this fire, and that the sofa was more likely, than would be expected by the ordinary consumer, to be set ablaze, she has not alleged a cause of action under this theory.

As to the cigarette manufacturer, the plaintiff alleged that the cigarettes did not meet this consumer expectation test because they were not

"... manufactured within the state of the art and were dangerous to an extent beyond that contemplated by the ordinary user, including the plaintiff, in that other cigarettes manufactured before, at or near, and after the time of manufacture of said cigarettes did not have added to them chemicals as alleged above, were not manufactured with paper as alleged above, and would not have caused ignition of the couch in question; and in that said cigarettes did not incorporate manufacturing techniques such as represented in patents on file with the U.S. Patent Office, many of which said patents were presented directly to and rejected by defendant Philip Morris. Two of such patents are attached hereto as Exhibits 'A and B.'"

The plaintiff had previously alleged that the cigarettes were defective because they had additional chemicals and special paper which prolonged burning, increased the intensity of the fire of the cigarettes and caused the cigarette to ignite the couch. She also alleged that the cigarette should have been self-extinguishing.

None of the plaintiff's allegations, if deemed true, establish that these cigarettes were more likely to cause the fire in question than might be *anticipated by the ordinary* consumer. In her brief, plaintiff argues that she established this fact since she says this cigarette was not an "ordinary" cigarette, but had been chemically treated to increase its intensity and prolong its fire between puffs. That argument is not supported by the allegations of the petition.

■ Plaintiff did not allege that "ordinary" cigarettes had not been so treated, nor that the defendant's cigarettes were different from the cigarettes with which the ordinary consumer is familiar. The plaintiff alleges only that at the time of the manufacture of these cigarettes there were other cigarettes which had not been treated chemically as had the defendant's cigarettes. Apparently, the plaintiff would hold the manufacturer responsible if his product is not as safe as some other product on the market. That is not the test in these cases. Only when a defect in the product renders it less safe than expected by the ordinary consumer will the manufacturer be held responsible.

This is particularly true in cases such as the instant case where the "defect" alleged is the failure to minimize an obvious danger which is inherent in the product itself. In order for a cigarette to be used, it must burn. The simple allegation that the cigarette should have been self-extinguishing or that some other cigarettes would not have burned as long, nor as intensely, does not establish that the cigarettes involved in this case were more likely to cause the fire than might be expected by the consumer.

The plaintiff has not alleged sufficient facts to state a cause of action in Manufacturers' Products Liability against defendant Philip Morris.

■ By the same analysis, the plaintiff's petition is insufficient with regard to Manufacturers' Products Liability on the part of the sofa manufacturer. Plaintiff alleges only that the sofa was "unreasonably dangerous" because it was not sufficiently flame retardant, and because Futorian Corporation issued no warning as to this defect. No allegations are made which would support a conclusion that the ordinary consumer expects a sofa to be flame retardant to the degree suggested by the plaintiff, and the petition, if deemed true, does not establish that the sofa in question was any more likely to be ignited than is expected by the ordinary consumer.

■ Plaintiff also claims, in addition to an action for Manufacturers' Products Liability, that defendants negligently caused the accident and resulting injuries. Plaintiff alleges the defendant, Philip Morris, added certain chemicals into the manufacturing process in order to promote prolonged burning of their cigarettes. Likewise, they claim the defendant, Futorian Corporation, negligently manufactured and sold a sofa that was not flame retardant.

It is common knowledge a lighted cigarette is potentially dangerous. It can cause fire and if accidentally placed on a couch can create a flame and burn. It is apparent in this case the unfortunate accident did not occur through any negligence of the defendants. There was no duty on the part of defendants to warn the plaintiff of an obvious fact.

There are no standards by which a cigarette manufacturer is required to make a cigarette that if left unattended will not burn. Nor is a sofa maker required to manufacture a flame retardant product. So the allegations of a faulty design and the creation of an inherently dangerous instrumentality must fail. The trial court properly sustained the demurrers of the defendants to plaintiff's petition.

JUDGMENT AFFIRMED.

SIMMS, C.J., and LAVENDER, HARGRAVE, OPALA and SUMMERS, JJ., concur.

DOOLIN, V.C.J., and WILSON and KAUGER, JJ., dissent.

DOOLIN, Vice Chief Justice, dissenting.

The majority of this Court has today blunted the development of strict liability under Products Liability cases in this state particularly as to chemical additives and the like.

The petition states that plaintiff purchased a sofa designed and manufactured by Futorian. Plaintiff fell asleep on the sofa while smoking, after which the sofa ignited. The sofa is alleged to be a defective product because it was not flame-retardant and because no warning was given as to its flammability. Futorian is also alleged to have been negligent in designing and constructing the sofa and in failing to warn plaintiff of its flammability. The negligence of Futorian, or the defect of its sofa, is alleged to be a proximate cause of plaintiff's injuries.

The petition also states that plaintiff purchased cigarettes designed and manufactured by Phillip Morris. One of these cigarettes is alleged to be a proximate cause of the fire. The cigarette is said to be a defective product because it was designed to burn longer and hotter than an ordinary cigarette, and because no warning was given as to this unreasonably dangerous design. The cigarette is also said to be defective because Phillip Morris is able to design a much safer cigarette. Phillip Morris is also alleged to have been negligent in designing such a cigarette, in failing to warn plaintiff that it was not self-extinguishing, in failing to test the cigarette for its burning characteristics, and in designing it to burn hotter than an ordinary cigarette.

Plaintiff has thus pled both a cause of action in Manufacturers' Products Liability and one in negligence.

Plaintiff also seeks punitive damages from Phillip Morris for allegedly manufacturing cigarettes known to be unreasonably dangerous, known to cause death and injury, and known to be far removed from the state of the art of the cigarette manufacturing industry, in reckless and willful disregard for the safety of persons and property.

The defendants' demurrers must be overruled if the facts pleaded will support any theory of recovery. *Johnson v. Steward.*[1] I find that the demurrers should have been overruled. I would reverse.

To determine whether plaintiff's petition stated a cause of action in Manufacturers' Products Liability, we must compare the necessary elements with the allegations.

The first element the plaintiff must allege is "that the product was the cause of the injury."[2] Plaintiff's petition states that the cigarette manufactured by Phillip Morris ignited the sofa manufactured by Futorian. The burning sofa caused her injuries. The first element was properly alleged.

The second element is "that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control."[3] The petition states that both manufacturers designed their respective products in a manner which was inherently defective, or at least defective when the products were sold without warnings. Since the defects were alleged to be in the design of the products, the second element has been properly alleged.

The third element is "that the defect made the article unreasonably dangerous to [the plaintiff] or his property."[4] In this element lies the crucial issue on appeal. The Plaintiff has alleged facts which she contends make the products unreasonably dangerous. Both manufacturers argue that their products are not unreasonably dangerous as a matter of law.

We defined the term "unreasonably dangerous" in *Kirkland v. General Motors Corp.*[5]:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

This definition was adopted verbatim from the Restatement [Second] of Torts, § 402A, comment i. We disapproved the California standard of proof which is more lenient to the plaintiff.[6]

An unreasonably dangerous defect may exist in different ways. "A product may be defective because of manufacturing or supplier flaws, defective design, or failure to supply proper warning about the product's dangers."[7] Plaintiff alleges that both the sofa and the cigarette were unreasonably dangerous because of defective designs and because of both defendants' failure to supply proper warnings about their products' dangers.

The cigarette manufactured by Phillip Morris is alleged to have been dangerous to an extent beyond that which would be contemplated by an ordinary consumer with the ordinary knowledge common to the community as to its characteristics. Plaintiff alleges that Phillip Morris adulterated the cigarette with chemicals designed to make the cigarette burn longer and hotter than an ordinary cigarette would. She also

---

1. 397 P.2d 907 (Okl.1965). A general demurrer admits the truth of the allegations of the petition. The petition must be liberally construed in favor of the pleader for purposes of the demurrer. If the petition states any facts entitling plaintiff to any relief it is error to sustain the general demurrer.

2. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okl.1974).

3. *Kirkland, supra.*

4. Id.

5. 521 P.2d 1353, 1362–63 (Okl.1974).

6. *See Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972).

7. *Mayberry v. Akron Rubber Machinery Corp.,* 483 F.Supp. 407 (N.D.Okl.1979) [federal court applying Oklahoma law in a diversity case].

alleges that the paper which formed the outer shell of the cigarette was "highly porous," which is said to make the cigarette burn longer and hotter. Assuming these facts to be true, we cannot say as a matter of law that the cigarette was not unreasonably dangerous.

Phillip Morris argues that a cigarette must be lit and must burn in order to fulfill its ordinary purpose. Since a cigarette must be hot enough to burn its tobacco and paper, it is argued that the danger is obvious to an ordinary consumer.

This argument does not meet plaintiff's allegations. Plaintiff does not contend that *all* cigarettes are unreasonably dangerous. It is not a matter of common knowledge that some cigarettes are designed to burn longer and hotter than others.

A cigarette which has been secretly adulterated so as to present an unexpected danger may very well be unreasonably dangerous. In comment i of the Restatement [Second] of Torts, § 402A, it is said, "Good tobacco is not unreasonably dangerous," to which we might add, tobacco containing "unexpected chemicals" may be unreasonably dangerous. It is for a jury to decide.

A product which is unreasonably dangerous without warnings may not be unreasonably dangerous if proper warnings are provided. If an ordinary consumer is provided with information as to a product's dangerous characteristics, the consumer can use the product safely or choose not to purchase the product at all. By giving a proper warning, the manufacturer is increasing the knowledge of the community as to that product's characteristics. The plaintiff alleges that Phillip Morris failed to provide adequate warnings about the excessive flammability of its cigarette. If indeed the cigarette manufactured by Phillip Morris were designed in a manner which made it dangerous to an extent beyond that which is contemplated by the ordinary consumer, then Phillip Morris had a duty to warn consumers of the dangerous characteristics of its product.[8]

The sofa manufactured by Futorian is also alleged to have been unreasonably dangerous. Plaintiff alleged that Futorian designed the sofa to be sold without flame-resistant fabric. At first blush, it would appear that an ordinary consumer with ordinary knowledge common to the community would expect a sofa to ignite if a cigarette were dropped on the surface of its fabric. If most sofas were made with flame-resistant fabric, however, an ordinary consumer might very well expect a sofa to merely scorch. The point is, we should not say as a matter of law that ordinary consumers expect sofas to have or not to have flame-resistant fabrics. Ordinary knowledge common to the community changes as technology and science changes the community's environment. Whereas a couch manufactured in 1950 might be expected to ignite easily, a couch made in 1970 or 1980 or 1990 might be expected to have different characteristics. The very existence of safer fabrics might cause the community to expect sofas in general to be safer than they once were. We should not say as a matter of law that an ordinary consumer expects a sofa to ignite when confronted with the glowing ember of a cigarette. The jury can supply that answer.

Lest I be misunderstood, I do not imply that all safety devices available must be incorporated into every product or that manufacturers are insurers for all injuries caused by their products. I do not suggest that each advance in the state of the art creates a new burden for product manufacturers. I would hold that the general acceptance by an industry of a new standard of safety, and a corresponding rise in the expectation of consumers as to the safety of that industry's products, may cause the product of a particular manufacturer who does not accept the industry's standard of safety to fall below the community's expectations. Since the reasonableness of a product's dangerousness is defined by consumer expectations, a design once safe may become a defective design over time.

8. *Smith v. United States Gypsum Co.,* 612 P.2d    251 (Okl.1980).

Of course a product made when the design was considered safe does not become defective when the design later improves. Thus an automobile manufactured in 1920 does not become defective merely because cars made in 1980 are designed more safely. But a car made in 1980 from a 1920 design would be unreasonably dangerous.

The plaintiff also asserts a negligence theory against each defendant. Although the negligence theory may be superfluous because Manufacturers' Products Liability erects a lesser burden to the plaintiff, it is still a viable theory.[9] However, a negligence action is no longer necessary for plaintiff to claim punitive damages against Phillip Morris.[10]

How has the majority blunted the development of Manufacturers' Products Liability in Oklahoma?

I believe the majority opinion has not considered the role and effect chemical additives, polymers, fire inhibiting fabrics and manufacturers' techniques play in assembling or manufacturing products of today. A plaintiff is entitled to prove, if he can, the dangers of such items. A myriad of products and processes are available and used or incorporated into such ordinary items as food, clothing, materials, fabrics, hardware, etc. The use of face masks, inhalers, goggles, protective clothing, and many other devices by firemen, police or servicing personnel gives abundant evidence actionable dangers, unknown to former generations, exist in our homes, buildings, automobiles, aircraft and our every surroundings.

WILSON and KAUGER, JJ., join in dissenting opinion.

---

**9.** See, *Kirkland,* 521 P.2d at 1365.

**10.** *Thiry v. Armstrong World Industries,* 661 P.2d 515 (Okl.1983).