Wilma COX, Plaintiff,

v.

The MURRAY OHIO MANUFACTURING COMPANY, Defendant.

No. CIV–87–539–B.

United States District Court,
W.D. Oklahoma.

Aug. 14, 1987.

Robert B. Smith and M. Michael Arnett, Oklahoma City, Okl., for plaintiff.

Chris Pearson and Sally E. Scott, Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, Okl., and Ronald Scott, Bracewell and Patterson, Houston, Tex., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BOHANON, District Judge.

This matter comes before the court upon the Motion for Summary Judgment filed by the defendant, The Murray Ohio Manufacturing Company ("Murray"). Wilma Cox, the plaintiff, commenced this manufacturer's products liability and negligence action to recover for injuries she sustained while using her self-propelled lawnmower, Model Number 2–22420X92, which had been designed, manufactured and distributed by Murray.

According to the pretrial order, Cox alleges that the lawnmower's chain and pinion guard was defective, that the risk created by this defect made the lawnmower unreasonably dangerous, that the defendant was negligent in designing the lawnmower, and that the warnings given by Murray were inadequate. Murray asks the court to determine, as a matter of law, that the defendant is not liable for the plaintiff's injuries because the lawnmower was not defective or unreasonably dangerous, the plaintiff voluntarily assumed any risk caused by Murray's alleged negligence, and Murray provided adequate warnings on and with the lawnmower.

Summary judgment is a drastic remedy which should be granted with caution. *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1 (10th Cir.1970). The court must view the evidence and all reasonable inferences in the light most favorable to the plaintiff. *Bruce v. Martin Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976). If, after so construing the evidence, the court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is proper. *Id.* at 445. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee note.

### UNDISPUTED FACTS

1. Cox was the original and only owner of the Murray mower involved in this case. The mower was three years old. She had used the mower once or twice a month in the summer to trim those areas she was unable to reach with her riding lawnmower.

2. The mower came equipped with a chain and pinion guard which covered the chain and sprocket portion of the mower. Cox acknowledges that the guard was intended to protect her from the chain, but she never really saw the chain as a danger. She felt the guard was unimportant because it didn't seem to help her mow.

3. Six months to one year after she obtained the mower, the guard began to loosen. Eventually, the metal split and the guard finally "fell off." She operated the mower for a year to a year and one-half prior to her accident without the guard in place.

4. Cox tried to repair the guard with duct tape and baling wire. There is no indication that she performed the maintenance recommended in the Owner's Handbook by insuring that all nuts, bolts, and screws were tight. The guard was attached to the mower with screws so that it could be removed for servicing and adjusting the chain located below. Even after the guard began to loosen, there is no

evidence that she attempted to tighten these screws.

5. She did not have the guard professionally repaired or attempt to retain a replacement guard. While the Owner's Handbook did not specifically warn of failing to obtain a replacement guard, it did warn repeatedly not to operate the mower without guards in place. The handbook also provided Cox with the information necessary to order a replacement guard.

6. With the guard missing, the chain and sprockets of the mower's self-propelling mechanism were exposed. Plaintiff was aware that the chain and sprockets turned continuously while the mower was running. Cox was also aware that injury could well result if she put her hands, fingers or any part of her flesh into the moving metal parts.

7. On August 30, 1986, Cox was mowing and observed that the chain "looked like it was trying to jump off or come off." She was wearing loose-fitting garden gloves as she always did when gardening. Being fully aware that the running engine was causing the chain to turn on the sprockets, plaintiff intentionally hit the moving chain with the back of her hand in an effort to correct the perceived problem with the chain. The glove caught in the chain and her gloved hand rolled into the rear sprocket of the mechanism causing her injuries.

8. Plaintiff had received the Owner's Handbook and read the portions pertaining to maintenance. The Handbook contains the following pertinent warnings and instructions:

*Page 2*

OWNER'S RESPONSIBILITY

IT IS THE OWNER'S RESPONSIBILITY TO:

. . . . .

(8) Operate the Mower only with Guards, Shields and Protective Devices in place and working correctly

. . . . .

**Read carefully the following rules for safe operation of your Mower. They should be strictly followed at all times to help prevent personal injury or damage to your Mower.**

. . . . .

Do—keep all nuts, bolts and screws tight to be certain your Mower is in a safe operating condition.

. . . . .

Do not—make any adjustments (except for carburetor) while the engine is running.

. . . . .

Do not—clean the Mower Housing or make any inspections or repairs without stopping the engine and removing the spark plug wire from the spark plug.

. . . . .

Do not—operate the Mower without proper guards, chute[d] deflector, grass catcher or other safety protective devices in place.

*Page 4*

SAFE OPERATION PRACTICES FOR WALK–BEHIND MOWERS OPERATION

. . . . .

2. Do not put hands or feet near or under rotating parts. Keep clear of the discharge opening at all times.

. . . . .

6. Stop the engine (motor) whenever you leave the equipment, before cleaning the mower housing and when making any repairs or inspections.

7. When cleaning, repairing, or inspecting, make certain the blade and all moving parts have stopped. Disconnect the spark plug wire, and keep the wire away from the plug to prevent accidental starting.

. . . . .

11. Never operate the mower without proper guards, plates, or other safety protective devices in place.

. . . . .

MAINTENANCE AND STORAGE

. . . . .

2. Keep all nuts, bolts, and screws tight to be sure the equipment is in safe working condition.

**1558** ■

Before doing any maintenance to the lawn mower disconnect the spark plug wire.

9. The mower was also equipped with a hang-tag which informed the owner as follows:

We want you to know and remember these important safety points before operating any outdoor power equipment. Accidents can happen even with well designed equipment if it is used improperly. For your own protection, follow these safety rules.

.    .    .    .    .

Read the Owner's Manual and follow the safety practices it describes. Be sure anyone who operates the unit reads and understands it.

.    .    .    .    .

Avoid Contact With Moving Parts—shut off engine, wait for movement to stop before doing maintenance, repairs, or adjustments including removal of grass catcher.

Keep Safety Guards In Place—never tamper with safety features, they are for your protection.

10. Located on the deck of the mower are two additional sets of warnings:

**IMPORTANT**
**READ AND FOLLOW OWNER'S MANUAL**

1. Remove people, pets and foreign matter from mowing area.

2. Keep all safety devices (such as guards, deflectors, drive control) in place and operating.

3. Wear proper shoes and clothing.

4. Keep hands and feet from under mower.

5. Stop engine and disconnect spark plug wire prior to servicing or adjusting.

The blade of this unit continues to rotate while the engine is running.

Do not use Mower unless safety devices are in place and operating.

**DANGER**
**KEEP HANDS and FEET AWAY**

11. Cox only recalls reading those warnings instructing her not to put her hands under the mower.

12. If plaintiff had been familiar with the warnings instructing her to keep all safety devices, including guards, in place and working, she probably would not have chosen to mow without the chain and pinion guard in place.

I.

In considering the motion for summary judgment, the court must apply the law of the state of Oklahoma. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938). Granting summary judgment, pursuant to Rule 56, in products liability cases arising under Oklahoma law is not an unknown occurrence in federal courts. *See Bruce v. Martin–Marietta Corp.*, 544 F.2d 442 (10th Cir.1976); *Gates v. Ford Motor Co.*, 494 F.2d 458 (10th Cir.1974); *Mayberry v. Akron Rubber Machinery Corp.*, 483 F.Supp. 407 (N.D.Okla. 1979). Similarly, the Supreme Court of Oklahoma has not hesitated to affirm the decisions of trial judges who, in sustaining demurs to petitions, concluded as a matter of law that particular defendants were not liable in products liability cases. *Lamke v. Futorian Corp.*, 709 P.2d 684 (Okla.1985); *Atkins v. Arlans Dept. Store of Norman, Inc.*, 522 P.2d 1020 (Okla.1974).

The landmark manufacturer's products liability case in Oklahoma is *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974). *Kirkland* requires a plaintiff to satisfy three essential elements: (1) that a defect made the product unreasonably dangerous to the user; (2) that said defect existed when the product left the manufacturer's possession and control; and (3) that the product was the cause of the plaintiff's injury. *Id.* at 1363.

In *Kirkland*, Oklahoma adopted the "consumer expectations" definition of the term "unreasonably dangerous" as set out in comment (i) of Section 402A of the Restatement (2d) of Torts:

> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Id.* at 1362–63.

The Oklahoma Supreme Court recently employed the consumer expectations test in ruling that a lit cigarette which ignited a sofa was not unreasonably dangerous because the ordinary consumer knows that a lit cigarette is capable of starting a fire. *Lamke v. Futorian Corp.*, 709 P.2d 684 (Okla.1985). "Only when a defect in the product renders it less safe than expected by the ordinary consumer," the court held, "will the manufacturer be held responsible." *Id.* at 686.

A manufacturer is not held liable merely because its product caused an injury. *Atkins v. Arlans Dept. Store of Norman, Inc.*, 522 P.2d 1020, 1022 (Okla.1974). In *Atkins*, the plaintiff sued the manufacturers of a lawn dart game after one of the lawn darts struck him in the eye. Although the court recognized that the darts, as well as penknives, Boy Scout hatchets and baseball bats, are capable of producing injury, the court found that the dart was not unreasonably dangerous under the consumer expectation test. *Id.* at 1021–22. Clearly, under Oklahoma law, a product is not unreasonably dangerous and liability may not be imposed unless the product is more dangerous than expected by the ordinary consumer.

Even assuming that the guard was defective due to poor design or faulty materials, Murray is not liable unless that defect made the product unreasonably dangerous. *Kirkland*, 521 P.2d at 1363. Whether the product was more dangerous than would be expected by the ordinary consumer is an objective test.

A chain spinning rapidly on two circulating sprockets is somewhat different than the sharp cutting edges involved with the table saws or lawn darts. *Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 102 (5th Cir.1978) (obvious danger caused by spinning table saw blade); *Atkins*, 522 P.2d at 1020, (sharp tip of lawn darts posed an obvious danger). A threat posed by a sharp edged object, however, is not the only danger recognized as an obvious danger by the courts. *Lamke*, 709 P.2d at 686 (ordinary consumer recognizes obvious danger of fire posed by a lit cigarette).

The chain and sprockets on the mower revolve rapidly, creating "pinch points" clearly capable of causing injury. The ordinary consumers in today's world, from experiences with bicycle chains as children to experiences with other chain-driven mechanisms as adults, recognize that these "pinch points" can cause severe damage. The chain and sprockets whirling on the front of the mower would be viewed as dangerous by the ordinary consumer because the gyrating parts are known to pro-

duce exactly the type of injury suffered by this plaintiff. Because the mower is not dangerous beyond the extent contemplated by an ordinary consumer, the mower, even if defective, is not unreasonably dangerous.[1]

The mere fact that the guard was removeable did not render the mower unreasonably dangerous. *See Briney v. Sears, Roebuck & Co.*, 782 F.2d 585 (6th Cir.1986) (removeable table saw guard); *Hagans*, 576 F.2d at 100–101 (consumers expect to be able to remove guard to perform specialized functions).

Murray also had no obligation to build a fail-safe product. *Stuckey v. Young Exploration*, 586 P.2d 726, 731 (Okla.1978). Unfortunately, in today's marketplace, one cannot expect the components of a mower, an appliance, a car or other machinery to last for many years. For this reason, Murray provided an extensive list of replacement parts and distributors in the Owner's Handbook. The fact that a guard on the mower may have failed sooner than the plaintiff would have liked does not make the product less safe than expected by the ordinary consumer.

This mower was not more dangerous than contemplated by the ordinary consumer; therefore, as a matter of law, the plaintiff's claim does not meet the essential elements set out in *Kirkland.*

## II.

■ Assuming that plaintiff has shown that Murray was negligent in its design and construction of the mower, Murray argues that Cox's claim is barred by the assumption of the risk doctrine.

Assumption of risk is generally viewed as a question for the jury. *See* OKLA. CONST. art. 23, § 6. Yet, assumption of risk issues, like other legal defenses, become questions of law when reasonable minds could not differ on the issue.

Voluntary assumption of a known risk centers on whether the claimant knew or should have known of the danger involved. *S.H. Kress & Co. v. Maddox*, 201 Okl. 190,

203 P.2d 706 (1949). The plaintiff must have a full appreciation of the risk involved. *Jack Healey Linen Service Co. v. Travis*, 434 P.2d 924 (Okla.1967).

Plaintiff was aware that the chain and sprockets would continue to whirl as long as the engine was running. She was aware that injury could occur if she put her fingers, hands, or any part of her flesh into moving metal parts. Cox did testify that "I never thought that I would get my hand caught in the chain."

Despite the plaintiff's unfortunate belief that she could maneuver her hand around the chain without encountering the moving metal parts, she clearly recognized those metal parts as a danger if her hand should come in contact with them. Most persons who voluntarily assume a known risk believe that they can "beat the odds" or they would not place themselves in danger. This plaintiff knew the spinning metal parts would very like cause injury if she came in contact with them. She knew that the chain and sprockets, as moving metal parts, posed a risk of danger. Reasonable minds could not differ in finding that, by striking these metal parts with her loosely-gloved hand while the engine was running, the plaintiff assumed the risk that the moving metal parts would harm her.

## III.

■ Before Cox can challenge the adequacy of the warnings given by Murray, she must establish that Murray had a duty to warn of the obvious danger. The plaintiff's argument that she was unaware of the danger posed by the mower because she never thought she would get her hand caught is not sufficient to establish such a duty.

A duty to warn arises only when the consumer can reasonably be said to be ignorant of the dangers to be warned of. *Burton v. L. O. Smith Foundry Products Co.*, 529 F.2d 108, 111 (7th Cir.1976); *Mayberry v. Akron Rubber Machinery Corp.*, 483 F.Supp. 407 (N.D.Okla.1979); *Hagan v.*

---

**1.** A subjective test would not yield a different result. Cox was aware that the chain turned continuously and that injury would occur if her

body came in contact with the moving metal parts.

*EZ Manufacturing Co.,* 674 F.2d 1047, 1052 (5th Cir.1982) (applying Oklahoma law). There is no duty to warn where the danger is obvious to the consumer or actually known to the person injured. *Berry v. Eckhardt Porsche–Audi, Inc.,* 578 P.2d 1195, 1196 (Okla.1978); *Atkins,* 522 P.2d at 1022.

As discussed previously, an ordinary, reasonable consumer would recognize the exposed chain and sprockets as an obvious danger. Moreover, this plaintiff knew the moving metal parts could cause bodily injury. "There is no duty on the part of a defendant to warn the plaintiff of an obvious fact." *Lamke,* 709 P.2d at 687.

Notwithstanding the fact that Murray had no legal duty to warn of obvious dangers, Murray did provide numerous warnings on the mower, on a hang-tag and in the Owner's Handbook.

Comment (j) of the Restatement 2d of Torts provides:

> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

*See also Smith v. United States Gypsum Co.,* 612 P.2d 251, 253 (Okla.1980).

The plaintiff's expert, Mr. John Harcourt, attacks the warnings on the mower because the first is printed on difficult-to-read clear plastic and the second appears to address only blade-involved dangers. The plaintiff does not in any way, however, present evidence questioning the viability of the hang-tag or Handbook warnings.

Plaintiff has testified that if she knew of the warning not to operate the mower without the guard in place, she probably would not have done so. She was warned repeatedly to insure that safety guards were in place and to stop the engine before making repairs or adjustments. This mower, if operated in accordance with either of these warnings, would not have been dangerous to the plaintiff. The mower was not, therefore, unreasonably dangerous even if Murray had a duty to warn.

## IV.

Murray having moved for summary judgment, Cox had a duty under Rule 56 to "set forth specific facts" showing a genuine issue or need for trial. The plaintiff has failed to provide the court with any evidence showing the existence of a material question of fact.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant, The Murray Ohio Manufacturing Company, have summary judgment against the plaintiff, Wilma Cox, and that the plaintiff recover nothing on her complaint from the defendant.