Jonathan **KELLEY**, a minor, By and Through his parents and next friends, Billy Jack **KELLEY**, Sr. and Lora Kelley; Billy Jack Kelley, Sr., Individually; and Lora Kelley, Individually, Plaintiffs,

v.

**RIVAL MANUFACTURING COMPANY,** a Delaware corporation, Defendant.

No. CIV–88–67–B.

United States District Court, W.D. Oklahoma.

Jan. 6, 1989.

John M. Merritt, Michael T. Rooney, Ron Collier, Celia A. Rooney, James Potts, Merritt, Rooney, & Hayden, Oklahoma City, Okl., for plaintiffs.

James W. Shepherd, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

BOHANON, District Judge.

### I.

### STATEMENT OF THE CASE

The plaintiffs in this action, Jonathan Kelley, a minor, and his parents, Lora and Billy Jack Kelley, Sr., seek $5.5 million in actual damages and $10 million in punitive damages from the defendant Rival Manufacturing Company ("Rival") for injuries sustained by Jonathan Kelley, when he caused a Rival Crock-pot slow cooker ("Crock–Pot") to fall off of a kitchen table and its heated contents spilled on him. Federal jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, since the plaintiffs are residents of Oklahoma and the defendant is a Delaware corporation, with its principal place of business in Missouri.

On October 25, 1988, the defendant Rival filed a Motion for Summary Judgment ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure, supported by a memorandum brief, exhibits, and deposition testimony. The plaintiffs filed a Response on November 9, 1988, and on December 1, 1988, Rival's Reply Brief was filed with leave of court. On December 6, 1988, the court set a hearing on the Motion, inviting the parties to submit additional evidence, including oral testimony. At the hearing on December 19, 1988, no additional evidence was presented by either party,

and following oral argument, the court issued a bench ruling granting the defendant's Motion for Summary Judgment. Fed. R.Civ.P. 56. *Celotex Corp. v. Catrett,* 477 U.S. 317, 320–21, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

## II.

### UNDISPUTED FINDINGS OF FACT

1. On February 16, 1986, the plaintiff Jonathan Kelley, a minor, was injured when the heated contents of a Rival Model 3100 Crock–Pot slow-cooker spilled on him. [Deposition of Lora Kelley, p. 29, ln. 13–25; p. 30, ln. 1–25; Plaintiffs' Complaint, p. 4.]

2. Plaintiffs Billy Jack Kelley, Sr. and Lora Kelley, parents of Jonathan Kelley, were the original and only owners of the Crock–Pot. When Lora Kelley unpacked the Crock–Pot she saw the enclosed instruction booklet describing the Crock–Pot's proper use and important safety features but did not read these provisions. [L. Kelley Dep., p. 59, ln. 15–25; p. 60, ln. 1–17; p. 61, ln. 24–25; p. 62, ln. 1–16]

3. On the day of the accident, Lora Kelley had prepared beans in the Crock–Pot which had been cooking for almost a full day. [L. Kelley Dep., p. 49, ln. 18–25.]

4. In preparation for serving the family meal, the Crock–Pot was unplugged and was used not as an appliance, but simply as a serving container at the table. The Kelleys have four children whose ages at the time of the accident were:

(a) Jonathan Kelley    11 months old
(b) Charity Kelley    7 years old
(c) B.J. Kelley    2½ years old
(d) Steven Kelley    almost 1 month old

[L. Kelley Dep., p. 51, ln. 2–25; p. 52, ln. 1–17; p. 90, ln. 20–25; p. 91, ln. 1–25; p. 92, ln. 1–7; Deposition of Billy Jack Kelley, Sr., p. 34, ln. 7–16.]

5. The table on which the Crock–Pot was sitting had a smooth formica top, with a metal lip around the edge. The Crock–Pot was not plugged in during the meal. The Crock–Pot stands on three heat-resistant hard plastic feet one inch in height. The Crock–Pot cord was not dangling over the edge of the table. [L. Kelley Dep., p. 150, ln. 20–25; p. 151, ln. 1–18; p. 152, ln. 17–25; p. 153, ln. 1–22; Deposition of William S. Endres, p. 18, ln. 15–18.]

6. After finishing the meal, Billy Jack Kelley went to the bedroom to smoke. Lora Kelley stayed to clear the table, but a short time after the others had left the kitchen, she also left the kitchen to go to the bathroom. However, she did not remove the Crock–Pot from the table. [L. Kelley Dep., p. 29, ln. 13–20; p. 31, ln. 10–23.] As she left, she told her seven year old daughter, Charity, to "keep an eye" on Jonathan. [L. Kelley Dep., p. 76, ln. 17–24.] Charity was in the living room area connected to the kitchen, as were Jonathan, B.J. and Steven. Jonathan was in his walker, which consisted of a seat situated on a frame with a wheeled base. [L. Kelley Dep., p. 92, ln. 19–25; p. 93, ln. 18–25; p. 94, ln. 1–17.]

7. Lora Kelley knew that Jonathan could move around the house in his walker by jumping up and down in it. Jonathan had pulled over her shelves of collectibles only a week before the accident. [L. Kelley Dep. p. 77, ln. 3–11; p. 96, ln. 8–17; Affidavit of Lora Kelley, ¶ 7.] Jonathan could not move the walker forward at all, only backwards. [L. Kelley Dep. p. 96, ln. 8–15.]

8. Lora Kelley agrees that close supervision is necessary if a small child is near a pot of cooking beans, and she is aware of children being injured by pulling pots of hot foods off stoves. [L. Kelley Dep., p. 75, ln. 19–25; p. 76, ln. 1–3; p. 85, ln. 15–24.] Neither Lora Kelley nor Billy Jack Kelley placed the Crock–Pot on a shelf or counter where it would be out of reach. They left it sitting on the table when they left the kitchen. [L. Kelley Dep., p. 31, ln. 10–23.] The Crock–Pot was a little less than three-quarters full of heated beans. [L. Kelley Dep., p. 134, ln. 9–22.]

9. Although Jonathan could not climb up on top of the table, Lora Kelley knew that Jonathan was able to reach the top of

the table by himself while standing in his walker. [L. Kelley Dep., p. 84, ln. 10–13.]

10. After using the bathroom, Lora Kelley did not immediately return to the kitchen; she went to the doorway of the bedroom where her husband was smoking. Shortly thereafter, they heard a thud and then ran to the kitchen, where they found Jonathan in his walker covered with hot beans. Hot beans were also on the floor. After falling on the tray of the walker, the Crock–Pot ended up on the floor on its side intact, most of the contents having spilled. [L. Kelley Dep., p. 88, ln. 15–25; p. 89, ln. 1–9; p. 152, ln. 6–16; Affidavit of Billy Jack Kelley, Sr., ¶ 3.]

11. Lora Kelley had used this Crock–Pot and another Crock–Pot on previous occasions. [L. Kelley Dep., p. 59, ln. 12–14; p. 72, ln. 25; p. 73, ln. 1–25; p. 74, ln. 1–14.] Lora Kelley was aware that the manufacturer included an instruction booklet with the Crock–Pot but stated that she did "not have time" to read it [L. Kelley Dep., p. 60, ln. 13–17; p. 61, ln. 24–25; p. 62, ln. 1–10; p. 139, ln. 11–12], although the Kelleys had owned the crock-pot for some seven weeks before the accident. [L. Kelley Dep., p. 59, ln. 24–25.] Billy Jack Kelley also never read the instruction booklet before the accident. [B.J. Kelley Dep., p. 12, ln. 3–9.]

12. The "IMPORTANT SAFEGUARDS" which Lora Kelley did not have time to read are contained on one page inside the cover of the instruction booklet.

13. The back page of the instruction booklet also contained an additional warning about the use of the product.

14. Rival manufactured the Crock–Pot in compliance with Underwriters Laboratories standards. [W. Endres Dep., p. 6, ln. 20–25; p. 7, ln. 1, 14–15; p. 11, ln. 18–25; p. 12, ln. 1–15; p. 17, ln. 14–17; p. 19, ln. 4–9; p. 24, ln. 15–16; Deposition of J. Fred Jesse, p. 12, ln. 9–25; p. 13, ln. 1–7; p. 21, ln. 17–22.] Underwriters Laboratories provides necessary guidelines to manufacturers regarding the design and manufacture of various products. [W. Endres Dep., p. 44, ln. 8–18.]

15. Lora Kelley left the glass top off of the Crock–Pot when the family finished eating, while the beans were cooling. [L. Kelley Dep., p. 136, ln. 8–12.]

## III.

### CONCLUSIONS OF LAW

The court has subject matter jurisdiction over this matter under diversity of citizenship, 28 U.S.C. § 1332, since the plaintiffs are residents of the State of Oklahoma and the defendant is a Delaware corporation with its principal place of business in the State of Missouri, and the amount in controversy is over $10,000.00.

Under Oklahoma law, a plaintiff in a manufacturers products liability action must prove that: (1) the defective product was the cause of the injury; (2) the defect was in the product at the time it left the manufacturer's possession and control; and (3) the defect made the product "unreasonably dangerous" to the consumer. *Lamke v. Futorian Corp.*, 709 P.2d 684, 688 (Okla.1985); *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla.1974).

The term "unreasonably dangerous" under Oklahoma law means that "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 447 (10th Cir.1976); *Lamke v. Futorian Corp.*, 709 P.2d 684, 688 (Okla.1985); *Hagan v. EZ Mfg. Co.*, 674 F.2d 1047, 1051 (5th Cir.1982); *Mayberry v. Akron Rubber Machinery Corp.*, 483 F.Supp. 407, 414 (N.D.Okla.1979); *Stuckey v. Young Exploration Co.*, 586 P.2d 726, 730 (Okla.1978); *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1362–63 (Okla.1974); Restatement (Second) of Torts § 402A, comment i.

Appellate courts have not hesitated to affirm decisions of trial courts that have concluded that particular manufacturers were entitled to summary judgment in products liability actions. *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 449 (10th Cir.1976); *Burton v. L. O. Smith*

*Foundry Products Co.*, 529 F.2d 108, 112 (7th Cir.1976); *Gates v. Ford Motor Co.*, 494 F.2d 458, 460 (10th Cir.1974); *Lamke v. Futorian Corp.*, 709 P.2d 684, 687 (Okla. 1985); *Atkins v. Arlans Dept. Store*, 522 P.2d 1020, 1022 (Okla.1974).

In manufacturers products liability actions involving minor plaintiffs, the question of whether a product is unreasonably dangerous is not premised on the viewpoint of the minor child, but rather is based upon the contemplation of the parent consumer who purchased the product. *Bellotte v. Zayre Corp.*, 531 F.2d 1100, 1103 (1st Cir. 1976); *Bellotte v. Zayre Corp.*, 352 A.2d 723, 725 (N.H.1976). Moreover, minor plaintiffs in manufacturers products liability actions must still prove the requisite elements of causation and show a defect that makes the product "unreasonably dangerous" as defined herein. *Colosimo v. May Dept. Store Co.*, 466 F.2d 1234, 1236 (3rd Cir.1972); *Atkins v. Arlans Dept. Store*, 522 P.2d 1020, 1022 (Okla.1974); *Vincer v. Esther Williams All–Aluminum Swimming Pool Co.*, 69 Wis.2d 326, 230 N.W.2d 794, 799 (1975); *Brawner v. Liberty Industries, Inc.*, 573 S.W.2d 376, 377–78 (Mo.Ct.App.1978).

■ Construing matters in the record in favor of the plaintiffs, the Court finds as a matter of law that there was no design defect in this product when it left the factory. Plaintiffs allege the following four design defects in the product: (1) the electrical cord was too long; (2) the electrical cord should have been detachable; (3) the lid should have been attached or attachable in some way to prevent or control spillage of the contents if the Crock–Pot was tipped over; and (4) the feet should have been constructed differently to not slide so easily. The plaintiffs have been given ample opportunity to present sufficient evidence regarding these alleged defects; however

the court concludes that they have completely failed to prove essential elements of their case, thus summary judgment for the defendant is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).[1]

■ Furthermore, even assuming that one or more of such alleged defects existed in the product, the Court finds that such alleged defects did not make the product unreasonably dangerous. Liability may not be imposed unless a defect existed *and* that defect made the product unreasonably dangerous. *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 448 (10th Cir.1976); *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla.1974).

The Crock–Pot was not unreasonably dangerous because there is no evidence showing that it was more dangerous than the average consumer would expect. All of the features of this product alleged to constitute defects are common to many kitchen appliances. Likewise, all of the features are readily observable by any consumer using the product. Ordinary consumers know that cooking appliances and/or containers containing hot food can be dangerous and can even cause burns to unsupervised children who come into contact with them. The risk of harm in this situation is as obvious to the ordinary consumer as the risk of a lighted cigarette, a saw blade, a lawnmower or a dart projectile. *Cf. Cox v. Murray Ohio Manufacturing Co.*, No. CIV–87–539–B, slip op. at 9–10, (W.D.Okla. Aug. 14, 1987); *Floyd v. Sears, Roebuck & Co.*, No. CIV–85–2449–B slip op. at 5–7 (W.D.Okla. Dec. 22, 1986) [1986 WL 22362]; *Lamke v. Futorian Corp.*, 709 P.2d 684, 687 (Okla.1985); *Atkins v. Arlans Dept. Store*, 522 P.2d 1020, 1022 (Okla.1974). The plaintiff parents themselves admitted that they know that small children should not be left unsupervised near a container of hot food. [Find-

---

1. Plaintiff's theories of recovery based upon implied warranty and negligence also necessarily fail based upon the findings of fact and conclusions of law relating to their strict manufacturers products liability claims. *Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 103–104 (5th Cir.

1978); *Burton v. L.O. Smith Foundry Products Co.*, 529 F.2d 108, 112 (7th Cir.1976); *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir. 1974); *Lamke v. Futorian Corp.*, 709 P.2d 684, 687 (Okla.1985); *Atkins v. Arlans Dept. Store, Inc.*, 522 P.2d 1020, 1022 (Okla.1974).

ings of Fact, ¶ 8.] Moreover, it is undisputed that Lora Kelley had used this Crock–Pot and another Crock–Pot before and consequently was aware of its physical properties, i.e. its size, shape, weight, heating capacity, movability and cord length. [Undisputed Findings of Fact, ¶ 11.] The plaintiff parents also knew that the Crock–Pot was left on the table with hot beans in it when they chose to leave three children under seven years of age unattended in the vicinity of the table. [Undisputed Findings of Fact, ¶ 6.]

The fact that an unfortunate and regrettable injury occurs does not in itself create a presumption that a particular product is defective or unreasonably dangerous. *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442, 448 (10th Cir.1976); *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir. 1974). Additionally, a manufacturer is under no duty to make products absolutely safe from every conceivable potential injury. *Gates v. Ford Motor Co.*, 494 F.2d 458, 460 (10th Cir.1974); *Marker v. Universal Oil Products Co.*, 250 F.2d 603, 605 (10th Cir.1957); *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986). Nor is there an obligation to make a "fail-safe" product or one that is "child-proof." *Hagan v. EZ Mfg. Co.*, 674 F.2d 1047, 1051 (5th Cir.1982); *Stuckey v. Young Exploration Co.*, 586 P.2d 726, 731 (Okla.1978); *Brawner v. Liberty Industries, Inc.*, 573 S.W.2d 376, 377–78 (Mo.Ct.App.1978). A manufacturer is not an insurer of his product. Finally, the design is fully in compliance with published Underwriters Laboratory standards for such appliances. It is clear that injury can occur when any container of heated food is left accessible to an infant. Since the undisputed facts indicate that the Crock–Pot was no more hazardous than the ordinary consumer would expect, the court finds as a matter of law that the Crock–Pot was not unreasonably dangerous.

In *Kirkland,* the Oklahoma Supreme Court held that the critical element of causation must be proven by a plaintiff to recover. *A plaintiff not only must prove that there actually was a defect in the product, but also must show that the defect caused the particular injury in question.* Causation "... beyond a mere possibility must be shown." *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1336 (Okla.1974). Plaintiffs have produced *no* evidence that any of the alleged defects caused the injury here. There is no evidence as to how the young child caused the Crock–Pot to leave the table and fall on him nor is there evidence that the child pulled the electrical cord. However, even if the child did pull the electrical cord, there is no evidence that the length of the cord or the non-detachable nature of it caused the accident. Since the plaintiffs admitted that the lid was not even on the Crock–Pot immediately before the accident, they have also completely failed to demonstrate how the lack of a locking or attaching lid device caused the accident or constituted a defect. In addition, plaintiffs have not presented any evidence showing that the lack of skid-resistant feet caused the accident.

Plaintiffs claim that the child's burn injuries were caused by his upsetting the Crock–Pot and spilling the hot contents. If the injuries were caused by the child's act of upsetting the Crock–Pot, this was only made possible by the parents' inattention and lack of supervision of Jonathan Kelley, not by any defect in the product. It is well known that a young child should not be left unattended near an object which could cause him injury. Plaintiffs Billy Jack and Lora Kelley failed to properly attend their infant son at the time the accident occurred. Any ordinary person could expect a child to injure himself, as occurred here, if left unattended near a container of hot food. In fact, even if the hot beans had been in a bowl, a casserole dish, a pot, or a skillet, the same unfortunate accident could have occurred. The sad reality is that when a small child is left unattended and within reach of potentially harmful items such as knives, appliances, or containers of hot food or liquids, accidental injuries can occur.

The Oklahoma Supreme Court, in the leading products liability case *held that*

*causation must be shown and "[i]f some act of the plaintiff caused the injury, rather than the defective product itself, causation is missing, and the plaintiff may not recover...."* *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1366 (Okla.1974) (emphasis added). Because the cause of the accident was the child being left in a potentially dangerous situation and the child's acts which somehow caused the Crock–Pot to fall from the table, not any defect in the product, the plaintiffs have failed to demonstrate this required element of their claim, and as a matter of law the defendant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ A duty to warn about the hidden or latent characteristics of a product exists only when those to whom the warning is directed are reasonably assumed to be ignorant of the dangers to which the warning relates. *Burton v. L.O. Smith Foundry Products Co.*, 529 F.2d 108, 111 (7th Cir. 1976); *Mayberry v. Akron Rubber Machinery Corporation*, 483 F.Supp. 407, 413 (N.D.Okla.1979); *Hagan v. EZ Manufacturing Co.*, 674 F.2d 1047, 1052 (5th Cir. 1982). Accordingly, "... it is generally held that there is no duty to warn when the danger or potentiality of danger is obvious...." *Hagans v. Oliver Machinery Co.*, 576 F.2d 97, 102 (5th Cir.1978). The Court finds that there was no duty to warn here because the danger giving rise to the injury was both obvious to an ordinary consumer and known by the plaintiff parents.

■ Yet, even assuming that there was a duty to warn of the obvious hazard of leaving a container of hot food near an unsupervised child, Rival did warn of that very danger, and the Court further finds that the warning was adequate. The first page of the Crock–Pot instruction booklet is entitled "IMPORTANT SAFEGUARDS." The first "basic safety precaution" advised the user to "Read all instructions." Billy Jack Kelley did not read the instructions

before the accident, and Lora Kelley testified that she did not "have time" to read the instructions. [Undisputed Findings of Fact, ¶ 11.] "Basic safety precaution" number four stated, "CLOSE SUPERVISION IS NECESSARY WHEN ANY APPLIANCE IS USED BY OR NEAR UNSUPERVISED CHILDREN." Lora Kelley admitted in deposition testimony that children could be injured by containers of hot food. [Undisputed Findings of Fact, ¶ 8.] Moreover, where an adequate warning is given, a manufacturer may reasonably assume that it will be read. *See,* Restatement (Second) of Torts § 402A comment j. The plaintiff parents were adequately warned of an obvious danger that they themselves recognized. Had they followed either the precautionary warnings given or conventional wisdom, this unfortunate and regrettable injury would have been prevented.

■ Plaintiffs offered evidence from Dr. Robert J. Block, of Norman, Oklahoma, who purported to be an expert with respect to the design of this product. The Court, having read the evidence of Dr. Block offered by the parties, finds that Dr. Block was not shown to be competent to testify as an expert in this case with respect to the alleged design defects about which he testified. An affiant must show that he is competent to testify to the subjects contained in his affidavit. There is nothing in the record to show that Dr. Block is qualified to testify as an expert to the alleged defects or alleged inadequate warnings in issue, and the Court finds he is *not* qualified.

■ The Court further finds that given the definition of "unreasonably dangerous" under Oklahoma law, Dr. Block's testimony would not assist either the Court or jury, and his claim of expertise on this issue would likely be misleading. Products which are alleged to be unreasonably dangerous must be evaluated from the objective standpoint of an ordinary consumer. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1362–63 (Okla.1974); *Lamke v. Futorian Corp.*, 709 P.2d 684, 686 (Okla. 1985). The relevant test is *not* what an

*expert* might expect in a product, but rather it is what the ordinary consumer, "with the ordinary knowledge common to the community," would expect. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1362–63 (Okla.1974).

Summary judgment, pursuant to Rule 56(c), is appropriate when it is apparent that a party, after a sufficient amount of time for discovery, cannot establish certain necessary elements of its case. Fed.R. Civ.P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, once a party has moved for summary judgment, the opposing party "... must set forth specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Plaintiffs have failed to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Defendant, on the other hand, has met its burden under Rule 56 of the Federal Rules of Civil Procedure to obtain summary judgment.

## CONCLUSION

Based upon the evidence submitted to the Court, the Court concludes that there was no defect in the design of the Crock-Pot. Furthermore, the Crock-Pot in question was no more dangerous than the ordinary consumer would expect; therefore, the Crock-Pot was not unreasonably dangerous. Moreover, the Court concludes that the plaintiffs have failed to demonstrate the requisite element of causation since the accident was not caused by any defect in the product, but rather was the result of the inattention of the parents toward their infant son, Jonathan, and his act of causing the contents of the Crock-Pot to spill on himself.

Finally, the Court concludes that the defendant had no duty to warn that a Crock-Pot containing hot food could cause injury to small children if left within their reach, since this was a potential danger that is obvious to an ordinary consumer and was actually known by the plaintiff parents.

Even if Rival did have a duty to warn, the warnings provided with the Crock-Pot were adequate to apprise the consumer of the obvious danger of using cooking appliances or containers of hot food near small children. Thus, on this basis, the Crock-Pot was neither defective nor unreasonably dangerous.

Every case involving a product does not meet the requirements necessary to warrant a products liability action. This would require that manufacturers ensure against all accidental injuries in which their products were involved even if the product was not defective.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant Rival Manufacturing Company's Motion for Summary Judgment herein is granted.