Thomas ROCK, et al.,

v.

OSTER CORPORATION, et al.

Civ. No. JFM-91-63.

United States District Court,
D. Maryland.

Dec. 5, 1991.

---

**7.** The territorial court provided the following instruction on intent:

[T]he prosecution must prove to your satisfaction beyond a reasonable doubt that the Defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the Law declares to be a crime even though he may not know the act is unlawful. The Defendant acts intentionally if he desires to cause the consequence of his act or if he believes that a consequence was substantially certain to result from his act....

Now, the crime charged in this case is a crime which requires proof of specific intent before the Defendant can be convicted. Specific intent means more than the general intent to commit the act.

Appellant's App. (Final Instructions to the Jury) at 122–23. The Appellant's objection was that the instruction on intent was separated from the instructions on the other elements of the offense. The Court finds the instructions sufficiently clear.

Bruce J. Klores and Thomas C. Cardaro, Washington, DC, for plaintiffs.

Francis X. Quinn, Rockville, MD, for defendants.

## MEMORANDUM

MOTZ, District Judge.

This is a products liability action brought by a young child, Michael Rock, and his parents, Thomas and Lisa Rock, against Oster Corporation, Sunbeam Corporation, Oster/Sunbeam Appliance Company, Sunbeam/Oster Company, Inc., Service Merchandise Company, Inc. and Allegheny International, Inc., companies involved in the design, manufacture, and sale of an electric fondue pot. Michael was badly burned in an accident involving the pot on January 17, 1989. Plaintiffs assert claims for negligence, breach of warranty and strict liability. Defendants have moved for summary judgment. Their motion will be granted.

### I.

On January 17, 1988 Captain and Mrs. Rock invited two friends to their home to watch a football game and have steak fondue. Prior to their guests' arrival, the Rocks discussed where to put the fondue pot. They decided against placing it on the kitchen table because the electric cord on the pot would have stretched across a gap three to four feet in width. The Rocks perceived that this would pose a hazard to their children who "were around." Mrs. Rock therefore decided to put the pot on a downstairs wet bar. She anticipated that her husband would stay behind the bar, keep the doors closed and take responsibility for "keep[ing] ... [their] kids out of there."

The Rocks and their guests ate fondue while the football game was on. After approximately one hour, Michael, who was then two years old, woke up from a nap and came downstairs. He first went to his mother. About five minutes later, he went into the area behind the wet bar where the electric cord from the fondue pot was plugged into an outlet. Captain Rock was in the area but did not see Michael enter. Michael became entangled in the electric cord and pulled the pot on top of himself. He was severely burned by the oil.

### II.

■ This is a design defect case. Plaintiffs have found a mechanical engineer who opines that defendants should have (1) incorporated into the design of the pot (or have supplied as a separate unit packaged with the pot) a clamp to secure the electric cord to the surface on which the pot is placed; (2) provided some kind of cover for the pot which would have eliminated or minimized the flow of oil if the pot were to tip over; and/or (3) affixed only a short cord to the pot to prevent the pot from being placed on a table or other surface from which the cord would dangle.

Under Maryland law the issue in a design defect case is "whether a manufacturer, knowing the risks inherent in his product, acted reasonably in putting it on the market." *Ziegler v. Kawasaki Heavy Indus., Ltd.*, 74 Md.App. 613, 621, 539 A.2d 701, 705, *cert. denied*, 313 Md. 32, 542 A.2d 858 (1988). The question of the alleged defect then depends on application of a "risk/utility" test. *Id.* at 622, 539 A.2d 701. As stated by plaintiffs, that test requires that the court balance seven factors to determine whether a product is unreasonably dangerous:

1. the usefulness and desirability of the product;

2. the availability of other and safer products to meet the same need;

3. the likelihood of injury and its probable seriousness;

4. the obviousness of the danger;

5. common knowledge and normal public expectation of the danger (particularly for established products);

6. the avoidability of injury by care in use of the product; and

7. the ability to eliminate danger without seriously impairing the usefulness of the product.

*Singleton v. International Harvester Co.,* 685 F.2d 112, 115 (4th Cir.1981), (quoting *Phipps v. General Motors Corp.,* 278 Md. 337, 345 n. 4 363 A.2d 955, 959 n. 4 (1976)).

Here, it may be assumed that the testimony of the plaintiffs' forensic witness would be sufficient to establish the second and perhaps the seventh of these factors. However, no "expert" opinion can negate what common sense dictates: that care needs to be taken to prevent a pot containing hot oil from being knocked over. The uncontradicted record establishes that the Rocks themselves were well aware of the hazard which the fondue pot presented. They decided not to place it on the kitchen table but, instead, on the wet bar, a place they thought would be out of the children's way. Mrs. Rock assumed that her husband would stay behind the bar to keep the children away because, as she testified on deposition, "[t]here was a pot of boiling oil cooking [there]." Captain Rock did, in fact, stay behind the bar. Unfortunately, he let his attention slip and the accident occurred.[1]

Defendants cite *Kelley v. Rival Mfg. Co.,* 704 F.Supp. 1039 (W.D.Okla.1989), in support of their motion. There, summary judgment was granted for the defendant where a young child pulled a "crock pot" off a kitchen table and was burned when the hot contents spilled on him. Plaintiffs distinguish *Kelley* on the ground that a crock pot is an ordinary kitchen appliance which is usually placed on a kitchen counter out of the reach of small children. In contrast, a fondue pot is likely to be placed on a table in easy reach of those using it. This distinction is not entirely frivolous. However, the facts remain that a pot containing hot oil presents an obvious danger, that the knowledge of this danger is "common" and that injury can be avoided by care and use of the pot. Therefore, at least three of the factors set forth in *Singleton* directly militate against a finding that the pot is "unreasonably dangerous" and direct entry of judgment in favor of defendants as a matter of law.

### III.

Plaintiffs' claims for negligence and breach of implied warranty fail for the same reason as does their claim for strict liability in tort. The only express warranties upon which they rely are the manufacturer's statements that the pot has a "sturdy-non-tipped base," that the pot is the "finest product of its kind available" and that it was "engineered to give [an] extra measure of satisfaction." The first of these alleged warranties is immaterial: the pot did not fall because its base was not sturdy but because it was pulled over by a two-year old child who entangled himself in its cord. The other two alleged warranties are merely general commendations of the product and thus are not actionable. *See Md.Com.Law I Code Ann § 2–313(2); Shaw v. General Motors Corp.,* 727 P.2d 387, 391 (Colo.Ct.App.1986); *Baugh v. Honda Motor Co.,* 107 Wash.2d 127, 150, 727 P.2d 655, 658 (1986); 8 Samuel Williston, *A Treatise on the Law of Contracts* § 971A (3d ed. 1964).

A separate order effecting the rulings made in this memorandum is being entered herewith.

---

1. Plaintiffs cite *McCormack v. Hankscraft Co.,* 278 Minn. 322, 154 N.W.2d 488 (1967) to support the proposition that the questions of the obviousness of the danger and the avoidability of injury by care should be judged from the perspective of a child, not an adult. *McCormack,* however, involved a vaporizer, not a fondue pot. It was reasonable for the designer of that vaporizer to anticipate that the product would be used (as in fact it was) in a child's room. No one would reasonably anticipate that a two-year old would be using or be given free access to a fondue pot. If any warning were needed to protect against that occurrence, it was expressly provided in the product instructions included by defendants with the pot. Paragraph 4 of those instructions states: "Close supervision is necessary when any appliance is used by or near children."

## ORDER

For the reasons stated in the memorandum entered herein, it is this 5th day of December 1991

ORDERED

1. Defendants' motion for summary judgment is granted; and

2. Judgment is entered in favor of defendants against plaintiff.