Gerald Joseph VAN BUSKIRK, III, a Minor, by his Parents and Natural Guardians, Gerald J. VAN BUSKIRK, Jr. and Lori Ann Van Buskirk, and in Their Own Right, Plaintiffs,

v.

The WEST BEND COMPANY Defendant,

v.

Lori Ann Van Buskirk Additional Defendant.

No. CIV. A. 96–6945.

United States District Court, E.D. Pennsylvania.

June 24, 1999.

Richard S. Seidel, Agins Haaz & Seidel, L.L.P., Philadelphia, PA, for Gerald Joseph Van Buskirk, III.

Basil A. Di Sipio, Susan E. Satkowski, Lavin, Coleman, O'Neill, Ricci, Finarelli & Gray, Philadelphia, PA, for West Bend Co.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Presently before the Court is the Motion of Defendant, The West Bend Company ("West Bend" or "Defendant"), for Summary Judgment against Plaintiffs. Plaintiffs instituted this product liability action against West Bend for injuries sustained by their six and one-half month old son, Gerald Joseph Van Buskirk, III ("Gerald"), on February 3, 1995. Plaintiffs claim design defects in West Bend's Four Cup Deep Fryer ("Four Cup Fryer") proximately caused Gerald's injuries. For the reasons which follow, West Bend's Motion is granted.

## I. FACTS.

On February 3, 1995, Mrs. Van Buskirk was home with Gerald and decided to make herself lunch consisting of chicken nuggets and french fries. She placed the french fries in the Four Cup Fryer atop a microwave oven which sat on a wheeled microwave cart next to the kitchen counter. Mrs. Van Buskirk previously used the Four Cup Fryer on the counter top,[1] but on this occasion, she placed it on the microwave oven.

The final time she checked whether the food was cooked, she placed Gerald in his walker in the living room, went back into the kitchen, and heard a whooshing noise behind her, indicating Gerald had entered the kitchen in his walker. Without turning around, she told him to leave the kitchen and then heard him scream. Immediately, she turned and saw his head and upper torso covered in hot oil. She picked him up from his walker and ran water over his head in the sink. Gerald sustained severe burns to his head and upper torso.

Plaintiffs filed this lawsuit alleging that the Four Cup Fryer was defectively designed and was the proximate cause of Gerald's injuries. West Bend filed a Mo-

---

1. Without the Van Buskirk's knowledge or permission, the Four Cup Fryer was thrown away by Mr. Van Buskirk's sister at a later time but prior to Plaintiffs' filing suit.

tion for Summary Judgment which was granted with respect to liability. Plaintiffs appealed to the United States Court of Appeals for the Third Circuit. The Appellate Court affirmed Summary Judgment on Plaintiffs' non-retractable cord alternative design theory, but remanded the case for this Court to address whether the lack of stabilizing features and the lack of an interlocking lid constitute design defects of the Four Cup Fryer. West Bend brings this Motion for Summary Judgment on the basis that its Four Cup Fryer is not defectively designed.

## II. *STANDARD.*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that

there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir. 1987).

■ In the product liability context, the court must decide, as a threshold matter, "whether the evidence is sufficient, for purposes of the threshold risk-utility analysis, to conclude as a matter of law that the product was not unreasonably dangerous, not whether the evidence creates a genuine issue of fact for the jury." *Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1049 n. 10 (3d Cir.1997).

## III. *DISCUSSION.*

■ Pennsylvania law governs this case because, in a diversity action, the applicable law is the substantive law of the state where the court is sitting. *Wallace v. Tesco Eng'g, Inc.,* No. 94–2189, 1996 WL 92081, *1 (E.D.Pa. Mar.1, 1996) (citation omitted), *aff'd,* 101 F.3d 694 (3d Cir.1996). The Pennsylvania Supreme Court adopted the Restatement (Second) of Torts, section 402A ("section 402A"), and made it a part of Pennsylvania's substantive law. *Webb v. Zern,* 422 Pa. 424, 427, 220 A.2d 853, 854 (1966); Restatement (Second) of Torts § 402A. Section 402A makes a seller of products "strictly liable for the physical harm caused by a product sold in a defective condition unreasonably dangerous to the user." *Jordon by Jordon v. K–Mart Corp.,* 417 Pa.Super. 186, 189, 611 A.2d 1328, 1330 (1992)(citing *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 94, 337 A.2d 893, 899 (1975)). Section 402A requires the plaintiff to prove that: (1) the product was defective; (2) the defect existed when it left the hands of the manufacturer; and (3) the defect caused the harm. *Ellis v. Chicago Bridge & Iron Co.,* 376 Pa.Super. 220, 226, 545 A.2d 906, 909 (1988)(citing *Berkebile,* 462 Pa. at 98, 337 A.2d at 898).

In order for section 402A to apply, therefore, there must be: "(1) a product; (2) a sale of that product; (3) a user or

consumer; (4) defective condition, unreasonably dangerous; and (5) causation—that the product caused physical harm to the ultimate user or consumer or to his property." *Riley v. Warren Mfg., Inc.,* 455 Pa.Super. 384, 395, 688 A.2d 221, 226 (1997) (citation omitted). Courts applying Pennsylvania law must "determine, initially and as a matter of law, whether the product in question is 'unreasonably dangerous.'" *Riley v. Becton Dickinson Vascular Access, Inc.,* 913 F.Supp. 879, 881 (E.D.Pa.1995) (citations omitted). Otherwise, "[w]ithout a showing of a defect, the supplier of a product has no liability under Section 402A." *Jordon,* 417 Pa.Super. at 189, 611 A.2d at 1330 (citing *Berkebile,* 462 Pa. at 94, 337 A.2d at 899).

## A. INTENDED USERS OF THE FRYER.

■ In order for section 402A strict liability to apply in this case, Gerald has to be an intended user of the Four Cup Fryer. "In strict liability, the focus is on a defect in the product, regardless of fault, and that defect is determined in relation to a particular subset of the general population: the intended user who puts the product to its intended use." *Griggs v. BIC Corp.,* 981 F.2d 1429, 1438 (3d Cir.1992) (citation omitted). Despite Mrs. Van Buskirk's testimony at her deposition that she was not preparing the french fries for her son's use and enjoyment, but rather for herself, (Dep. of Lori Ann Van Buskirk of 3/14/97 at 81, 101), Plaintiffs state in their response to Defendant's Motion for Summary Judgment that Mrs. Van Buskirk was preparing the french fries "for her son's lunch. That fact is not in dispute." (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 11–12.) Just as "[n]o one would reasonably anticipate that a two year old [child] would be using or given free access to a fondue pot" *Rock v. Oster Corp.,* 810 F.Supp. 665, 667 n. 1 (D.Md.1991), *aff'd,* 983 F.2d 1057, 1993 WL 5896 (4th Cir.1993), it is unreasonable to anticipate that a six and one-half month old child would be using a deep fryer.

This Court finds persuasive the statement that "[a]ny ordinary person could expect a child to injure himself, . . . if left unattended near a container of hot food . . . . [W]hen a small child is left unattended and within reach of potentially harmful items such as knives, appliances or containers of hot food or liquids, accidental injuries can occur." *Kelley By and Through Kelley v. Rival Mfg. Co.,* 704 F.Supp. 1039, 1044 (W.D.Okla.1989)(child burned pulling crock pot containing hot baked beans from kitchen table). Plaintiffs contend that because there was no age restriction in the instruction booklet, children could use the Four Cup Fryer. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 13.) This Court is not persuaded by Plaintiffs' argument and finds that it is not reasonable to anticipate that a six and one-half month old child would be using or given free access to a deep fryer.

Plaintiffs, in arguing that Gerald is a user of the Four Cup Fryer, rely on the definition of "user" found in the commentary to section 402A. A user is defined therein as "includ[ing] those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes, as well as those who are utilizing it for the purpose of doing work upon it. . . ." *Riley v. Warren,* 455 Pa.Super. at 395, 688 A.2d at 227; Restatement (Second) of Torts § 402A, comment (*l*). Thus, Plaintiffs contend that Gerald was a "passive beneficiary" of the Four Cup Fryer and compare Gerald to a passenger in an automobile who passively enjoys the benefit of the motor vehicle. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 12.) Defendant correctly argues that Gerald was not "passively enjoying" the benefits of the deep fryer since he was only old enough to eat Gerber jar foods and cereal (Dep. of Lori Ann Van Buskirk of 3/14/97 at 80), not french fries.

Gerald was not a passive beneficiary, he was a bystander. "Thus far the courts, in applying the rule stated in this Section

[402A], have not gone beyond allowing recovery to users and consumers...." *Riley v. Warren*, 455 Pa.Super. at 395, 688 A.2d at 227. As a bystander, Gerald is precluded from recovery under section 402A because "[c]asual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery." *Id.* at 397, 688 A.2d at 227. Because Gerald was not an intended user of the Four Cup Fryer, strict liability does not apply and Defendant's Motion for Summary Judgment is granted. For purposes of this Motion, however, this Court must also determine whether the fryer was unreasonably dangerous or defective under the facts alleged.

## B. UNREASONABLY DANGEROUS PRODUCT: *AZZARELLO* ANALYSIS.

■ The Pennsylvania Supreme Court set forth the standard for determining whether a product is "unreasonably dangerous" when it stated:

Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? Should adequate warnings of the dangerous propensities of an article insulate one who suffers injuries from those propensities? When does the utility of a product outweigh the unavoidable danger it may pose? These are questions of law and their resolution depends upon social policy.

. . .

It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint.

*Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978).

Thus, Pennsylvania law requires an initial determination by this Court whether strict liability applies, decided under the following seven factor risk-utility analysis:

(1) the usefulness and desirability of the product—its utility to the user and the public as a whole;
(2) the safety aspects of a product—the likelihood that it will cause injury and the probable seriousness of the injury;
(3) the availability of a substitute product which would meet the same need and not be as unsafe;
(4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility;
(5) the user's ability to avoid danger by the exercise of care in the use of the product;
(6) the user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and
(7) the feasibility, on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.

*Fitzpatrick v. Madonna*, 424 Pa.Super. 473, 476, 623 A.2d 322, 324 (1993)(citing *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 50 n. 5, 485 A.2d 408, 423 n. 5 (1984) and John W. Wade, *On the Nature of Strict Tort Liab. for Prods.*, 44 Miss.L.J. 825, 837–38 (1973)). Even minors like Gerald must prove the requisite elements of causation and show a defect which makes the product unreasonably dangerous. *Colosimo v. May Dep't Store Co.*, 466 F.2d 1234 (3d Cir.1972). An examination of each risk-utility factor follows.

1. *Usefulness and Desirability of the Product—Its Utility to the User and to the Public.*

■ The utility of the Four Cup Fryer on February 3, 1995 is the first factor this

Court must consider in its "unreasonably dangerous" risk-utility analysis. Defendant contends that deep fryers, like other kitchen appliances, make cooking easier. (Brief in Supp. Def.'s Mot. for Summ. J. at 8.) Plaintiffs' expert, Mr. Ver Halen, also states the fryer "presents an economical product, convenient to use for cooking a variety of deep fat fried foods (popular in our society)." (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. Ex. L.) Furthermore, the Van Buskirks repeatedly used the Four Cup Fryer. Mrs. Van Buskirk acknowledges use of the Four Cup Fryer prior to February 3, 1995, but cannot remember the exact number of times she used it. (Dep. of Lori Ann Van Buskirk of 3/14/97 at 33.) Mr. Van Buskirk used the Four Cup Fryer at least forty times. (Dep. of Gerald J. Van Buskirk, Jr. at 22.) The Van Buskirks' repeated use of the Four Cup Fryer is evidence of its utility.

Plaintiffs suggest that the addition of low-cost safety devices would make this fryer safer and still be economically feasible. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 16–20.) This argument goes beyond the scope of the first risk-utility factor and will be addressed in section III.B.4. *supra.*

### 2. *Safety Aspects.*

Plaintiffs' experts rely upon Consumer Product Safety Commission ("CPSC") data and a CPSC report generated by the Artech Corporation ("Artech") to demonstrate that the Four Cup Fryer is unsafe. (Def.'s Brief in Supp. Def.'s Mot. for Summ. J. Ex. O.) This CPSC data, comprised of seven consumer product injury incidents, relates to another fryer brand, not West Bend's Four Cup Fryer. The Artech report data is likewise comprised of testing performed on non-West Bend products. The only West Bend product liability lawsuit involved a slotted spoon left in a two-cup fryer which caused the fryer to tip over. (Dep. of Joanne Turchany at 42.) There is no evidence of consumer complaints or lawsuits involving the Four Cup Fryer.

Defendant notes that this District Court in *Monahan v. Toro Co.,* 856 F.Supp. 955, 959 (E.D.Pa.1994), observed that the CPSC, in a four year study, estimated an average of 19,100 injuries regarding riding lawn mowers requiring emergency room treatment and estimated 7.65 million riding mowers were in use during those four years. Therefore, only 2.5 out of every 1,000 riding mowers were associated with injuries requiring emergency room treatment. *Id.* The *Monahan* court found the likelihood of serious injury was low since the CPSC reported 75 deaths per year, or one death for every 102,000 operating riding mowers. *Id.* Approximately 500,000 Four Cup Deep Fryers were manufactured and distributed by West Bend in the ten year period preceding February 3, 1995, with only one other product liability lawsuit filed against West Bend. (Dep. of Gregory Miller at 60.) This statistic, as well as the relatively low number of reported consumer accidents with non-West Bend fryers presented by Plaintiffs, weighs in favor of the safety of the Four Cup Fryer. Merely because "[s]ome injuries may occur does not mean that a [product] is defective." *Monahan,* 856 F.Supp. at 959; *Shetterly v. Crown Controls Corp.,* 719 F.Supp. 385, 400 (W.D.Pa.1989), *aff'd,* 898 F.2d 142 (3d Cir.1990).

### 3. *Availability of a Safer, Substitute Product.*

The Court of Appeals for the Third Circuit remanded this case with instructions that this Court decide whether stabilizing features and a locking lid would make the Four Cup Fryer safer. Plaintiffs' mechanical engineering expert, Richard Ver Halen, proposes a number of alternative designs of the Four Cup Fryer incorporating both stabilizing features and a locking lid including: (1) suction cups on the fryer's feet; (2) a cover with a locking lid similar to those found on pressure cookers but with fewer locking tabs; (3) various wall,

cabinet or counter top mounted designs attached with brackets and having alternative cord features or an integral electrical connector. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. Ex. M.) There is no evidence that Mr. Ver Halen tested these alternative designs. West Bend tested similar alternative designs in its product development, but these alternatives were discarded for safety reasons including risk of oil spillage and inability to adhere suction cups or other non-skid components to surface materials. (Dep. of Gregory Miller at 58–60.)

■ The proposed alternative design must be "safer overall." *Riley v. Becton,* 913 F.Supp. at 886. As Defendant points out, *Riley v. Becton* stands for the proposition that if the risk of injury is not eliminated by the proposed safety device, then the proposed alternative design is not, in fact, a safer substitute product. (Def.'s Reply Mem. Law in Supp. of Def.'s Mot. for Summ. J. at 8). The proposed alternative designs proffered by Mr. Ver Halen cannot, therefore, be classified as overall safer substitutes because the risk of injury is not eliminated by the proposed safety devices.

Another alternative design presented by Plaintiffs' expert incorporates a locking lid. T–Fal, a competitor of West Bend, manufactured a deep fryer with a locking lid in 1995. (Dep. of Gregory Miller at 20.) Plaintiffs argue that this locking lid, if incorporated into the Four Cup Fryer, would have prevented Gerald's injuries. The accident involving Gerald, however, occurred during the cool-down phase of the deep frying process. The existence of the T–Fal locking lid model is therefore irrelevant to this case. The user instructions on the T–Fal model advise that the locking lid should be removed or not used in the cool-down of the fryer and oil. (Brief in Supp. of Def.'s Mot. for Summ. J. Ex. S.) West Bend itself began manufacturing a fryer in 1998 which incorporates a locking lid with a charcoal filter for use during cooking. The purpose of this fryer lid is to eliminate cooking odors, not for use during cooling. (Brief in Supp. of Def.'s Mot. for Summ. J. at 14.) Plaintiffs have not come forward with sufficient evidence to prove that the accident would not have occurred if the Four Cup Fryer was used with the cover removed during the cooling phase, as recommended in the West Bend Deluxe Deep Fryer instruction manual. (Brief in Supp. of Def.'s Mot. for Summ. J. Ex. T.) Accordingly, no safer, available substitute fryer existed at the time of Gerald's accident.

4. *Elimination of the Unsafe Character of the Product without Impairing its Usefulness or Making It Too Expensive.*

Defendant suggests, and this Court agrees, that adding a lid to a fryer does not eliminate the obvious danger of working with hot oil, especially present when the oil is uncovered and cooling. (Brief in Supp. of Def.'s Mot. for Summ. J. at 16.) The addition of a locking lid to the Four Cup Fryer would impair the cooking process because the user would not be able to view the food to determine if it is finished cooking. (Dep. of Gregory Miller at 67–68.) This Court must "balance 'the utility of the product against the seriousness and likelihood of the injury and the availability of precautions that, though not foolproof, might prevent the injury.'" *Surace,* 111 F.3d at 1049–50 (quoting *Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 450, 467 A.2d 615, 618 (1983)).

Plaintiffs provide cost information and projections for their alternative fryer designs. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. Ex. M.) None of the proposed alternative designs were tested to prove their feasibility. Plaintiffs note that the *Surace* court found that evidence that a particular design concept had been used in other contexts and tested and proven on the machines at issue was sufficient to satisfy the fourth prong of the risk-utility test. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def.

at 26.) Although West Bend utilized locking lids on its coffee pots, (Dep. of Richard Franke at 51), the locking lids had not been tested and proven feasible on the Four Cup Fryer. Thus, any cost projections are unusable since the feasibility of the alternative designs is unknown.

5. *The User's Ability to Avoid Danger by Exercising Care in the Use of the Product.*

This Court must evaluate whether Mrs. Van Buskirk acted as an "ordinary" consumer in avoiding dangers associated with working with hot oil. *Berkebile,* 462 Pa. at 96 n. 6, 337 A.2d at 899 n. 6. Plaintiffs contend that Mrs. Van Buskirk used care in placing the Four Cup Fryer on the only available cooking surface, the microwave oven. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 28.) Based upon the evidence provided, the counter top under the kitchen cabinet was an area she had always used in the past which had a dry, level and heat-resistant surface.[2] In order to avoid the necessity of cleaning spattered oil from the kitchen cabinets, however, she placed the Four Cup Fryer on top of the microwave. (Dep. of Lori Ann Van Buskirk of 4/14/97 at 182–183.) Mr. Van Buskirk testified that he always placed the fryer on the counter top. (Dep. of Gerald J. Van Buskirk, Jr. at 25–26.) At issue, then, is whether Mrs. Van Buskirk exercised care by placing the Four Cup Fryer on top of the microwave oven.

Plaintiffs claim there was no testimony that the microwave cart and microwave oven were in any way unstable. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. at 28.) Merely because no testimony was elicited that the cart was unstable does not impliedly mean that it was, in fact, stable. The cart was wheeled, therefore it was moveable. Just as the instructions for use warned that "[s]erious hot-oil burns may result from a deep fat fryer being pulled off a countertop," (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. Ex. G at 3), so too could serious hot-oil burns result from a deep fat fryer being pulled off or jarred from atop a microwave oven. Thus, the microwave oven top was not a reasonable location for the Four Cup Fryer and Mrs. Van Buskirk could have avoided danger associated with working with the Four Cup Fryer by not placing the Four Cup Fryer on the microwave oven.

6. *The User's Anticipated Awareness of the Dangers and Their Avoidability.*

Hot oil is an open and obvious danger. *Rock v. Oster,* 810 F.Supp. at 667 (no design defect where two year old child sustained oil burns from entanglement in electrical cord which tipped over fondue pot); *Scoby v. Vulcan–Hart Corp.,* 211 Ill. App.3d 106, 155 Ill.Dec. 536, 569 N.E.2d 1147 (1991)(no design defect where restaurant worker fell into fryer and was burned by oil); *Kelley,* 704 F.Supp. at 1044 (no design defect where child pulled crock pot of baked beans off kitchen table and severely burned). Because of the inherently dangerous nature of working with or around hot oil, Plaintiffs argue that there should have been a consumer warning in the product instructions that the oil would not cool immediately. Defendant contends, however, "[t]his accident did not happen because [Mrs. Van Buskirk] did not know the oil was still hot." (Def.'s Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 10.)

Mrs. Van Buskirk was aware of the danger that the oil would be hot and require some cooling. She stated at deposition, "when you would use the fryer and you

2. These circumstances are recommended in West Bend's instructions for Four Cup Fryers. (Brief of Pls. in Supp. of Resp. in Opp'n to Mot. Summ. J. of Def. Ex. G at 3.) Mrs. Van Buskirk testified at deposition that she reads any product manuals and brochures when she buys a product so that she "can figure out how to use it." (Dep. of Lori Ann Van Buskirk of 3/14/97 at 51–52.)

would use the oil, after it cooled down, you would put the lid on it and put it back in the refrigerator so you could use it again." (Dep. of Lori Ann Van Buskirk of 3/14/97 at 31–32.) Even if there had been a warning about the length of time needed for the oil to cool, the accident occurred immediately after Mrs. Van Buskirk removed the french fries from the Four Cup Fryer. Therefore, any proposed warning regarding the length of cool-down time would not have prevented this accident.

### 7. Feasibility on the Part of West Bend of Spreading the Loss.

The final risk-utility factor is the feasibility, on the part of West Bend, of spreading the loss of a defective fryer by setting the price of the fryer or carrying liability insurance. Analysis of the previous six risk-utility factors reveals that the Four Cup Fryer is not defective. As the *Monahan* Court held, a manufacturer "should not have to spread among its customers the economic loss resulting from injuries from a product that is not defective, and for which the risk of harm can be eliminated by operating the product properly and heeding given warnings." *Monahan,* 856 F.Supp. at 964. An examination of this final risk-utility factor is therefore unnecessary.

### IV. CONCLUSION.

Based on the above reasons, the seven risk-utility factors weigh in favor of West Bend and against Plaintiffs. Plaintiffs have not sufficiently established that the Four Cup Fryer is unreasonably dangerous to justify imposition of liability on West Bend and entitle Plaintiffs to present their case to a jury. Thus, West Bend's Motion for Summary Judgment is granted.

An Order follows.

### ORDER

AND NOW, this 24th day of June, 1999, upon consideration of the Motion of Defendant, The West Bend Company, for Summary Judgment and all Responses and Replies thereto, it is hereby ORDERED and DECREED that Defendant's Motion is GRANTED.